IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THOMAS CURTIS HINES,  #118977        :

    Plaintiff,                                       :

vs.                                                        :        CIVIL ACTION 11-0644-WS-C

KIM THOMAS, *et al.*,                             :

    Defendants.                                  :

## AMENDED REPORT AND RECOMMENDATION[1]

    This action is before the undersigned on the referral of the mandate from

the Eleventh Circuit Court of Appeals in this civil rights action filed by an

Alabama prison inmate who is proceeding *pro* se and *in forma pauperis*.  (Docs. 42,

43).  After careful review of the proceedings in this action, plaintiff's allegations

in his amended complaint (Doc. 19), and other actions filed by the Plaintiff in this

Court, it is determined that he has failed to present a nonfrivolous claim.  It is

therefore recommended that this action be dismissed, prior to service of process,

pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous.

### I.  Posture of Action.

    The Eleventh Circuit "vacate[d] the district court's dismissal of Hines's

complaint and its imposition of a strike . . . and . . . remand[ed this action] for

further proceedings."  (Doc. 42 at 2).  It also directed this Court "to consider and

---

[1] This amended report and recommendation is entered solely because the undersigned
neglected to attach to the recommendation entered on January 29, 2016 the attachment
referenced on pages 33-34, *infra*. The attachment referenced on the foregoing pages is
attached to this amended report and recommendation and, therefore, the time for
plaintiff to file objections will "run" from his receipt of this Amended Report and
Recommendation.

address whether an effective dismissal with prejudice is warranted and, if so, why a lesser sanction would not suffice." (*Id.* at 13). Chief Judge Steele referred this action to the undersigned "for all further proceedings in accordance with applicable law, including without limitation consideration of what sanction, if any, should be imposed based on the limited relevant non-disclosures noted by the Eleventh Circuit." (Doc. 43 at 1).

Pursuant to this reference, the undersigned scheduled a hearing for July 23, 2015, for the now released plaintiff "to appear and present any evidence that he has on the issue of what sanction, if any, should be imposed based on the limited number of relevant non-disclosures noted by the Eleventh Circuit." (Doc. 47 at 2). Plaintiff appeared *pro se* at the hearing.

The hearing proceeded as scheduled with its focus, in part, on the need for imposing sanctions for plaintiff's failure to list all his prior actions on the court-provided complaint form, which he signed under penalty of perjury. (Docs. 47, 49). Previously, the Eleventh Circuit concluded that the District Court's dismissal of this action without prejudice was effectively a dismissal with prejudice due to the expiration of the statute of limitations and, therefore, directed the "district court to consider and address whether an effective dismissal with prejudice is warranted, and if so, why a lesser sanction would not suffice." (Doc. 42 at 13). Had the statute of limitations not expired, the Eleventh Circuit observed that the District Court "likely would not have abused its discretion in dismissing the action." (*Id.* at 12). In light of the Eleventh Circuit's remarks regarding plaintiff's explanations for his inability to list his prior cases and its conclusion that there did "not appear to be a 'clear record' of willful misconduct on Hines's part" (Doc. 42 at 11), and the plaintiff's representations during the hearing, the

undersigned does not find that the ultimate sanction of dismissing his claims with prejudice is necessary or appropriate given the other findings contained in this Report and Recommendation. In fact, the undersigned chooses not to recommend the imposition of any sanctions for plaintiff's conduct. This decision was reached for a number of reasons: plaintiff has recently been released from prison and is employed at a local group home in maintenance; a ruling on the merits of his claims has been delayed because he was required to appeal the prior dismissal of his action; there are limited sanctions that are available at this time; and, if this Report and Recommendation is followed, he will suffer a third strike and his ability to claim *in forma pauperis* status in the future will be limited. However, since plaintiff advised that he would be able to pay the remainder of the $350.00 filing fee, the undersigned has imposed a stay of this proceeding pending the payment of the remainder of the filing fee.

When plaintiff commenced this action, he was a prisoner who filed a motion to proceed without prepayment of fees in lieu of paying the filing fee. (Docs. 2, 10). The Prison Litigation Reform Act ("PLRA") requires that a prisoner proceeding *in forma pauperis* pay the total filing fee for a § 1983 action, albeit over time, which may begin with the payment of a partial filing fee at the commencement of the action. 28 U.S.C. § 1915(b)(1). In the present action, plaintiff was required to pay a partial filing fee of $18.00, which he did. (Doc. 14). Subsequent to this payment, other payments were made by deductions from his inmate account, totaling $40.00. (Docs. 39-41). Due to plaintiff's release from incarceration, there is no longer a third-party from which the remainder of plaintiff's filing fee can be collected. Plaintiff remained obligated, however, to pay the remaining $292.00 in order for this action to proceed. *Gay v. Texas Dep't*

*of Corr. State Jail Div.,* 117 F.3d 240, 242 (5th Cir. 1997); *Brown v. Eppler,* 725 F.3d 1221, 1231 (10th Cir. 2013); *see Harris v. Garner,* 216 F.3d 970, 975-76 (11th Cir.) (relying on *Gay* in its reasoning that under the PLRA the plaintiff's status as a prisoner at the time of filing determines the PLRA's application), *cert. denied,* 532 U.S. 1065 (2001).

Since the sanctions hearing, where the Court advised Hines that he would be required to pay the remainder of the filing fee, plaintiff made a $150.00 payment toward the fee on September 11, 2015 (Doc. 50) and paid the remainder of the filing fee, $142.00, on October 26, 2015 (Doc. 51). Accordingly, now that the filing fee is fully paid, the Court is able to complete its screening of the amended complaint.

## II.  Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B).

### A.  Standards of Review.

With the Court's prior disposition of this action being vacated by the Eleventh Circuit, and there being no impediment to this action proceeding, this action is now before the undersigned for screening of the amended complaint (Doc. 19) pursuant to 28 U.S.C. § 1915(e)(2)(B), inasmuch as plaintiff is proceeding *in forma pauperis.*[2] *See* Doc. 43; S.D. ALA. GENLR 72(a)(1)&(2)(R) (referring § 1983 actions filed by prisoners to the magistrate judges). Through a broad grant of discretion, district courts manage *in forma pauperis* actions. *Clark v. State of Ga. Pardons & Paroles Bd.,* 915 F.2d 636, 639 (11th Cir. 1990). This

---

[2] Plaintiff's amended complaint supersedes the original and supplemental complaints. *Fritz v. Standard Life Ins. Co.,* 676 F.2d 1356, 1358 (11th Cir. 1982); Doc. 16 at 5 (informing the plaintiff that the amended complaint would supersede his original complaint and supplemental complaint).

discretion is necessary to prevent the privilege of proceeding *in forma pauperis* from becoming a "broad highway into the federal court," as "[i]ndigence does not create a constitutional right to the expenditure of public funds and the valuable time of the courts in order to prosecute an action which is totally without merit." *Phillips v. Mashburn,* 746 F.2d 782, 785 (11th Cir. 1984).

When considering a *pro se* litigant's allegations, the court holds them to a more lenient standard than those of an attorney, *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998), but it does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott,* 610 F.3d 791, 710 (11th Cir. 2010) (relying on *Ashcroft v. Iqbal,* 566 U.S. 662 (2009)). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

However, at any point in the proceedings, when the district court finds that the action is frivolous or malicious, or fails to state a claim upon which relief can be granted, the action's dismissal is mandated by 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). *Bilal v. Driver,* 251 F.3d 1346, 1348 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001). An action is frivolous when the district court concludes that it has "little or no chance of success," because based on the face of the complaint, the legal theories are "indisputably meritless," or the factual allegations are "clearly baseless," (that is, where the complaint "lacks an arguable basis either in law or in fact"). *Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Denton v.*

*Hernandez,* 504 U.S. 25, 32-34, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992));
*Neitzke,* 490 U.S. at 326, 109 S.Ct. at 1831-32.[3] *Cf. Clark v. State of Ga. Pardons & Paroles Bd.,* 915 F.2d 636, 639 (11th Cir. 1990) ("A lawsuit is frivolous if the 'plaintiff's realistic chances of ultimate success are slight.'") (quotation omitted).

A claim based on an indisputably meritless legal theory encompasses claims for "an infringement of a legal interest which clearly does not exist," *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833, or where "the defendants are immune from suit." *Id.;*[4] *see Clark,* 915 F.2d at 640 (when an affirmative defense would defeat the action, the action's dismissal as frivolous is also warranted).[5]

A factually baseless claim is one "describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Denton,* 504 U.S. at 32-33, 112 S.Ct. at 1733; *cf. Battle,* 898 F.2d at 129 n.2 (baseless allegations also include allegations contradicted by other allegations in the complaint); *Weaver v. Geiger,* 294 F. App'x 529, 534 (11th Cir. 2008) (conspiracy allegations that are baseless due to the absence of supporting evidence can be found to be fantastic and delusional);[6] *Clark,* 915 F.2d at 641 (an inmate's "long

---

[3] *Neitzke'*s interpretation of 28 U.S.C. § 1915(d) is applied to § 1915(e)(2)'s superseding statute, 28 U.S.C. § 1915(e)(2)(B). *Bilal,* 251 F.3d at 1348-49.

[4] Dismissal of damages claims against a defendant who is immune from damages claims is now a separate, statutory ground for a frivolous dismissal. 28 U.S.C. § 915(e)(2)(B)(iii).

[5] The *Clark* court observed that an action could state a claim but still be frivolous due to the application of an affirmative defense, such as absolute immunity from damages; res judicata or collateral estoppel; allegations previously litigated in another suit; or the statute of limitations. *Clark,* 915 F.2d at 640 n.2. It also mentioned that an action could be frivolous where money damages were sought from a defendant whom the court knew was judgment proof, or where others recently unsuccessfully litigated an identical claim in another action. *Id.* at 640.

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

history of bringing unmeritorious litigation . . . in deciding to dismiss a questionable claim" may be considered). In addressing a factually baseless claim, the court is granted "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke,* 490 U.S. at 326, 109 S.Ct. at 1833; *see Denton,* 504 U.S. at 32, 112 S.Ct. at 1733 (the court is not required "to accept without question the truth of the plaintiff's allegations"); *Donald v. Miller,* 541 F.3d 1091, 1100 (11th Cir. 2008) ("[W]ildly implausible allegations in the complaint should not be taken to be true[.]").

Moreover, section 1915(e)(2)(B)(ii) authorizes the dismissal of a complaint for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by

---

mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949. In determining whether a claim is stated, the factual allegations are accepted as true, except for conclusory assertions or a recitation of a cause of action's elements. *Id.; Mitchell*, 112 F.3d at 1490.

### B. Amended Complaint.  (Doc. 19).

#### 1. Denial-of-Access-to-Courts Allegations.

The amended complaint, filed on the Court's § 1983 complaint form, contains the following denial of access allegations. Plaintiff claims that a "lengthy conspiracy" began with his sentencing for possession of burglar's tools, which was on December 5, 1983, for which he received a sentence of 30 years' imprisonment.  (Doc. 19 at 6-7, 35). Numerous judges and officials joined in the conspiracy and, now, defendant prison officials are alleged to have joined the conspiracy when they denied plaintiff access to the courts by changing, and not maintaining, the legal resources in Fountain Correctional Center's ("FCC") law library, by reducing the equipment and furniture in the library, and by limiting access to the library and its legal resources by inmates.  (*Id.* at 5).  From April 18, 2011 to July 15, 2011,[7] defendants, Kim Thomas, Alabama Department of Corrections' ("ADOC") Commissioner; James Deloach, ADOC's Assistant Commissioner; Gwendolyn Mosley, an ADOC Regional Coordinator; Cynthia White, FCC's Warden; Walter Myers, an FCC Assistant Warden; Richard Hetrick, an FCC Captain; T. Raybon, an FCC Sergeant; and S. Langham, an FCC Sergeant, joined the ongoing conspiracy against him conducted by non-defendants Mobile

---

[7] Even though plaintiff identified this time frame for his claims, his allegations contain claims beyond it.

County Circuit Court Judge John Lockett and Alabama Court of Criminal Appeals Judges Lane Main,[8] Samuel H. Welch, Kelli Wise, H.W. "Buck" McMillian, Sue Bell Cobb, Pamela W. Baschab, and Greg Shaw.  (*Id.* at 6; Doc. 1 at 164, 167). Plaintiff alleged that the conspiracy involving the non-defendants violated his rights under the First, Fourth, Eighth, Thirteenth, and Fourteenth Amendments and under 42 U.S.C. §§ 1985 and 1986.  (Doc. 19 at 6).

In addition to the correctional defendants who are alleged to have joined the conspiracy with the non-defendants, plaintiff lists other correctional officials as defendants with his classification claims, namely, Stan Dean, Bridgett Tyner, and Annette Coleman, Central Review Board members; Cynthia Brown, a classification supervisor; and Lauren Philyaw, a classification specialist.  (*Id.* at 2, 31-34). Finally, apparently on a theory of completeness, he adds the Alabama Department of Risk Management and the Alabama Board of Adjustment as defendants.  (*Id.* at 2, 34).[9] [10]

---

[8] Plaintiff refers to Judge Lane Main, which appears to be a combination of the names of Alabama Court of Criminal Appeals Judge James Allen Main and the Alabama Court of Criminal Appeals Clerk Lane W. Mann, whose names are reflected in the documents attached to plaintiff original complaint.  (Doc. 1 at 167-68).

[9] Inasmuch as plaintiff only alleged the Alabama Department of Risk Management and Alabama Board of Adjustment were named as defendants for the purpose of guaranteeing payment of a judgment, and did not allege they engaged in any untoward action against him, much less that their actions violated a federal right of his, these defendants are due to be dismissed as any claim against them is frivolous.  *Kilgo v. Ricks*, 983 F.2d 189, 194 (11th Cir. 1993) (affirmed the dismissal of the prison commissioner on frivolity grounds where there were no allegations of personal involvement or a policy).

[10] In the general description of plaintiff's claims, the majority of the allegations do not provide a causal connection to a specific defendant who took the complained of action. (Doc. 19 at 1-24).  In these allegations, plaintiff may not refer to any person or defendant, or he may allege "the defendants" or "a defendant" in some allegations.  It is only when the complaint form requires a specific defendant to be listed that most of the causal connections occur.  *Id.* at 24-35. When a specific defendant is mentioned in the general description, that defendant is included in the Court's description of the claim.

Plaintiff asserts that the non-defendant judges knew from plaintiff's trial transcript that he could not be sentenced to 30 years in prison on a conviction for a Class C felony because the maximum sentence is 10 years. (*Id.* at 7). These judges also knew his continued incarceration on this sentence violated the Fourth, Eighth, Thirteenth, and Fourteenth Amendments, but they "failed to act even though compel[led] to d[o] so under 42 U.S.C. sec. 1985-1986." (*Id.*).

In 1985, in his direct appeal, the Alabama Court of Criminal Appeals rejected Hines' argument that the state failed to give notice that it was treating him as a habitual offender. (*Id.*). However, in 1987, he claims the Alabama Supreme Court adopted his argument in another criminal defendant's case and ordered the defendant resentenced without application of the Habitual Felony Offender Act ("HFOA"). (*Id.*).

In 1986, in plaintiff's post-conviction relief proceeding, the Alabama Court of Criminal Appeals rejected plaintiff's argument that his 30-year sentence is illegal, as did this Court in plaintiff's action for writ of habeas corpus. (*Id.*). Plaintiff argued that the admission of his prior convictions while he was being impeached did not waive the state's requirement to give him notice that he

---

Noteworthy is plaintiff's statement in his response to the show cause order that "[he] has no idea which defendant individually is responsible for the law library at Fountain Correction Center[,]" and he makes a similar statement regarding his mail (except for the transcript). (Doc. 17 at 2-4). *Cf. Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (holding that a plaintiff must causally connect a defendant's actions, omissions, customs, or policies to a deprivation of the plaintiff's constitutional or federal rights in order to state a claim under § 1983).

Additionally, plaintiff's response to the Court's order requiring him to file an amended complaint contains an interesting statement: "Plaintiff does not believe his case is rare what is rare is a prisoner understand[ing] *Lewis* and understanding that under certain circumstances claims that normally would be examined under habeas corpus can also be examined in the context of 1983 if the claim is not raised seeking habeas relief, but is offer[ed] for the sole purpose of showing that he had a non-frivolous claim that was dismissed on habeas corpus as the result of the defendant['s] action[s] in this case, and because of those action[s], plaintiff was actually injured." (Doc. 17 at 11).

would be treated as a habitual offender or to relieve the state of its burden to prove his prior convictions. (*Id.*). Even though the Court of Criminal Appeals rejected his argument, he alleges its judges, McMillian, Cobb, Shaw, and others, adopted the plaintiff's argument on an identical issue raised in another case using plaintiff's case law, and reversed that criminal defendant's sentence, ordering him to be resentenced without applying the HFOA. (*Id.* at 7-8).

In 2003, when plaintiff filed a Rule 32 petition, the conspiracy among non-defendant judges, Lockett, Main, Welch, and Wise, to violate his rights continued. (*Id.* at 8). That is, Judge Lockett denied his petition, and Judges Wise, McMillian, Shaw, Baschab, and Cobb affirmed the denial. (*Id.*). Plaintiff argued that the trial court was without jurisdiction to impose an enhanced sentence under the HFOA because the HFOA was not invoked prior to trial, after conviction, or prior to sentencing. (*Id.*). According to plaintiff, not only did the Alabama Court of Criminal Appeals ignore its 1987 decision, which is contrary to its holding in plaintiff's case, it ignored other issues raised by him. (*Id.*).

In 2009, plaintiff filed a second Rule 32 petition, in which he asserted that the trial court was without jurisdiction to enhance his sentence because his case action summary sheet reflects that he was not sentenced under the HFOA. (*Id.* at 8-9). Judge Lockett summarily dismissed the petition as successive. (*Id.* at 8). Judges Wise, Welch, and Main upheld the dismissal on appeal. (*Id.*). The appellate decision is allegedly contrary to the law that holds jurisdictional issues are not subject to the successive petition rule and to a line of cases from 1997, holding that if the defendant's records do not show that he was sentenced pursuant to the HFOA, a sentence greater than authorized by statute for a conviction is illegal. (*Id.* at 8-9).

12

"Between April and July-2011, the defendant[s] Kim Thomas, James Deloach, Gwendolyn Mosley, Cynthia A. White, Walter Myers, Richard Hetrick, T. Raybon and S. Langham joined the conspiracy in place formed by the Alabama judges by taking direct action again[st] plaintiff to prevent him from exercising his 1st and 14th Amendment right of access to court." (*Id.*). In February, 2010, when plaintiff was returned to FCC, defendants Thomas, Deloach, Mosley, Myers, and Hetrick were maintaining a law library in a 17-by-20 foot room to serve over 1200 inmates. (*Id.*). Plaintiff maintains that the law library was inadequate due to its physical size, law books not being updated, limited seating at only two folding tables, and there being available only two Dell computers, a computer for the inmate clerk at one folding table, a standard typewriter, and a Brother word-processor on a small table. (*Id.* at 9-10). Plaintiff states that "defendant" compensated for the law library's inadequacy by allowing plaintiff to use the law library six days a week from 8:30 a.m. to 5:00 p.m. (*Id.* at 10).

Plaintiff alleges that his trouble began when he advised defendant White, defendant Thomas, the Alabama Parole Board, and the Alabama Supreme Court that his sentence and resulting incarceration were illegal. (*Id.*). Plaintiff directed them to his case action summary sheet and the trial court's sentencing order that do not show that he was sentenced pursuant to the HFOA, and therefore he should not have received a 30-year sentence for a Class C felony conviction, which carries only a 10-year maximum sentence. (*Id.* at 10-11).

In 2011, plaintiff filed two original habeas corpus actions with the Alabama Supreme Court. (*Id.* at 11). In the first habeas petition, filed April 18, 2011, he "out-lined the history of his case from direct appeal to hi[m] being

procedurally barred from filing other Rule 32 Petitions in post conviction proceedings . . . . [and] how in post-conviction proceeding[s] three times he was denied relief[.]" (*Id.*). He advised the court these rulings occurred even though the Alabama courts subsequently agreed with his argument but only applied it in other defendants' cases, and not his case. (*Id.*). And in his federal habeas corpus proceeding, he contended that the state withheld this change in the state's law. (*Id.*). His state habeas petition contained other arguments challenging his sentencing and incarceration, some of which were previously described. (*Id.*). When the Alabama Supreme Court received his petition, the docket sheet reflects that Judge Wise was notified, which allegedly began the "coordinated effort" by defendants Thomas, Deloach, Mosley, White, Myers, Hetrick, T. Raybon, and S. Langham to violate his First and Fourteenth Amendment right of access to the courts. (*Id.* at 11-12; *see* Doc. 1 at 40).

Plaintiff "assumes" his case was assigned to Judge Wise. (*Id.* at 12). On June 23, 2011, an unknown judge transferred his case to Judge Welch of the Alabama Court of Appeals. (*Id.*). "Shortly before the June-23 transfer order or immediately thereafter, the defendant[s] Thomas, Deloach, Mosley, White, Myers, Hetrick, T. Raybon and S. Langham abruptly ordered changes in the law library access rules specifically designed to make it almost impossible for plaintiff to prosecute his habeas corpus when it was dismissed by Judge Welch on July 27, 2011." (*Id.*).[11] Defendants implemented new rules for the law library,

---

[11]In plaintiff's original complaint, he attached the FCC Inmate Newsletter, dated *August 3, 2011,* which stated, "The institutional law library is designated for inmates to access legal resources and materials. In an effort to ensure that all population inmates are given the opportunity, the operations and hours of the library *are changing.*"  (Doc. 1 at 42) (emphases added).  This date is contrary to plaintiff's allegation that on June 23, 2011, or immediately thereafter, the library changes were ordered. (Doc. 19 at 12). The newsletter

which did away with access to the law library from 8:30 a.m. to 5:00 p.m. six days a week.  (*Id*.). Instead, plaintiff's access to the law library was scheduled for one day a week when his dorm goes. (*Id*.). The scheduled day is Monday, 8:30 a.m. to 2:30 p.m., which would not be available to him when a holiday falls on Monday, as the law library is now closed on holidays and on weekends.  (*Id*.).

Under the new rules, plaintiff must submit a written request to use the law library seven days beforehand and receive written approval. (*Id*. at 13, 18). Defendants will then use a lottery system to determine which prisoners, from plaintiff's dorm and from the other dorm scheduled for Monday access, who submitted a request, will get to use the law library; the combined dorms' population is 380 inmates, all of which will not fit in the 17-by-20 foot law library. (*Id*. at 13).

Plaintiff asserts that access is meaningless because books are missing and have not been updated since 2009, so the two computers must be used to determine if the case is still good law, and computer time is limited to one hour when seven or more inmates are using the law library.  (*Id*. at 13-14).  In addition, defendants further hampered plaintiff's access by making the Brother word-processor inoperable through the removal of key letters and by eventually taking away the word-processor, thereby leaving only a standard typewriter in the law library for 1268 inmates to use.  (*Id*. at 14). Defendants also removed one folding table with its six chairs, leaving only one table with six chairs. (*Id*.). And the Westlaw system was replaced with the Lexis system, which limits access only to

---

further stated, among other things, that an inmate must have a pass to enter the law library, which may be obtained by submitting a written request a week in advance to Sgt. Langham.  (Doc. 1 at 42).  It also provided that "[a]n inmate who has an extension may request additional library time with appropriate legal documentation" (*id*.), which plaintiff did on occasion and was granted additional time.  *See* Doc. 1 at 44, 52, 54.

cases from the Fifth and Eleventh Circuits, the United States Supreme Court, and Alabama. (*Id.* at 14-15). This change in computerized-research providers caused the removal of current "[c]ase law . . . from other circuit[s that] plaintiff would [have] rel[ied] on to support his claim in this complaint as well as his pending habeas corpus filed in CV-11-0648 WS-C."[12]   (*Id.* at 15). As an example, plaintiff listed five cases from other circuits with their citations and holdings that he contends would support his denial-of-access-to-courts claims in this action and his claim in *Hines v. White, supra,* but which were removed in November or

---

[12] Plaintiff filed *Hines v. White,* CA No. 11-0648-WS-C (S.D. Ala. June 12, 2012), a § 2254 habeas petition/"independ[e]nt action and/or motion to set aside judg[]ment," after plaintiff's application to file a second or successive habeas petition was denied by the Eleventh Circuit. (Doc. 15 at 6). A Report and Recommendation was entered recommending the dismissal of the petition as an unauthorized second or successive habeas corpus application under 28 U.S.C. § 2244(b)(3)(A). (Doc. 15). On June 8, 2012, plaintiff filed an objection to the Report and Recommendation. (Docs. 16, 17). After consideration of the objection, the Report and Recommendation was adopted, the petition was dismissed, and the certificate of appealability ("COA") was denied. (Docs. 18, 19). Plaintiff filed a notice of appeal and a motion to reconsider the denial of his motion for a COA. (Docs. 20, 23). Chief Judge Steele referred the reconsideration of the denial of the COA to the undersigned to address plaintiff's ground that the state's conduct was a fraud on the court under Rule 60(d), thereby immunizing his petition from appellate preauthorization and not subjecting it to summary dismissal as a second or successive petition. (Doc. 28).

In the subsequent report and recommendation denying the motion to reconsider the denial of the COA, an extensive review of plaintiff's litigation history surrounding his conviction and sentence was conducted, and a thorough discussion covered plaintiff's argument that a fraud on the court had occurred when the state did not advise the prior federal habeas court, *Hines v. Johnson,* CA 86-0357-BH-S (S.D. Ala. Dec. 5, 1988), of the decision in *Webb v. State,* 539 So.2d 343 (Ala. Crim. App. 1987), which addressed the requirements for application of the HFOA. (Doc. 32). After consideration of plaintiff's objection, Chief Judge Steele adopted the Report and Recommendation denying plaintiff a COA and the privilege of proceeding *in forma pauperis* on appeal. (Docs. 35, 36, 37). The Eleventh Circuit likewise found that plaintiff was not entitled to a COA. (Doc. 39). Subsequently, plaintiff's petition for the writ of certiorari was denied. (Doc. 40).

This Court takes judicial notice of the state and federal court proceedings in which plaintiff was convicted and sentenced and in which he attacked his conviction or sentence. *Cunningham v. District Attorney's Office for Escambia Cnty.,* 592 F.3d 1237, 1255 (11th Cir. 2010). The second report and recommendation will be discussed in more detail later in the analysis of plaintiff's denial-of-access-to-courts claims. *See Infra.*

December 2011 to prevent plaintiff from "further researching them for additional case law in other circuit[s]."  (*Id.* at 15-16).

These new law library rules are alleged to have created "unnecessary competition for limited law library time and resources[.]"  (*Id.* at 19).  Previously, plaintiff would have access to a computer when a prisoner leaves to eat or to go to the yard. (*Id.*). And under the new computer system, plaintiff is unable to check and read defendants' authorities from other circuits during the years from 2004 to 2012.  (*Id.* at 20).

In addition to these new law library rules, "defendant" allegedly ordered plaintiff's mail to be monitored, which caused his trial transcript from the Alabama Department of Archives, mailed in May, 2011, to be removed and destroyed. (*Id.* at 16). The transcript allegedly contained evidence that plaintiff's 30-year sentence was illegal. (*Id.*). It was further ordered that plaintiff's mail be delayed in order to keep him from promptly requesting additional law library time to prevent him from responding to the July 27th dismissal of his first habeas corpus petition by filing an application for rehearing. (*Id.*). It was further ordered that plaintiff's outgoing mail be delayed so he could not file his second petition for habeas corpus in the Alabama Supreme Court within 14 days from the dismissal of his first habeas corpus petition. (*Id.*). Thus, his second habeas corpus petition was dismissed as untimely. (*Id.*). Subsequently, plaintiff was denied access to the law library until after the 14-day period for filing an application for rehearing had expired. (*Id.*). Plaintiff's first habeas corpus petition, its application for rehearing, his second habeas corpus petition, and its application for rehearing, are alleged to all contain "non-frivolous" claims that he was not able to present. (*Id*. at 17, 20). Plaintiff contends that the Alabama Supreme Court's

decisions dismissing his habeas corpus petitions as untimely were erroneous because, under Alabama law, no time limit for filing a habeas corpus petition exists, and that even though he had a nonfrivolous claim, he was unable to argue that these dismissals were erroneous because he was unable to file for a rehearing. (*Id.* at 17). Plaintiff alleges that he lost those arguments because defendants denied him access to the law library. (*Id.*). hat is, because of the law library rule changes, "plaintiff['s] two non-frivolous habeas corpus [petitions] [were] dismissed as a direct result[.]" (*Id.* at 20).

Plaintiff contends that these rules, which are the most "severe and restrict[ive]" ever implemented at FCC, were "designed and implement[ed] to prevent him from prosecuting his claims in his state court habeas corpus because they were promulgated and implement[ed] and enforced immediately after the defendant[s] Thomas and White w[ere] given facts which showed plaintiff was illegally incarcerated and immediately after plaintiff filed his first habeas corpus in the Alabama Supreme Court on April 18-2011 and it being transferred to the Alabama Court of Criminal Appeals for dismissal between June 23-2011 and July 27-2011." (*Id.* at 18). Plaintiff maintains that defendants' actions were blatant. (*Id.*).

### 2. Classification Allegations.

The classification claims added in the amended complaint are against defendants Kim Thomas, Cynthia White, Stan Dean, Bridgett Tyner, Annette Coleman, Cynthia Brown, and Lauren Philyaw for violating plaintiff's procedural and substantive due process rights under 42 U.S.C. §§ 1983, 1985, and 1986. (*Id.* at 21). But for defendants Thomas and White, the other defendants were added to this action by the amended complaint. These defendants allegedly

failed to properly examine his record for convictions so that he could participate in programs, and after discovering that he was improperly barred, they failed to remove the bar.  (*Id.* at 21, 28).

In 1984 or 1985, plaintiff's classification records reflected that he had three convictions for escape when, in reality, he only had one conviction for attempted escape from a city jail in 1981. (*Id.* at 21). Plaintiff complained at that time about this erroneous information and was told that it would be investigated and cleared up, but his three convictions would not prevent him from participating in work release. (*Id.*). In November or December 1990, plaintiff was granted community custody and was assigned to work release, during which he worked at Fural Daniels on Rangeline Road as a skilled laborer, until he was released on parole in July 1991. (*Id.*).

In January 2010, at Kilby Correctional Center, plaintiff was told that under the 2010 criteria for work-release participation, "he was eligible for work release but was barred from participation because of his allege[d] three prior escapes." (*Id.*).  Plaintiff informed officials that he only had one conviction in 1981, which was for attempted escape. (*Id.* at 21, 28). Subsequently, plaintiff was transferred to FCC in February 2010.  (*Id.* at 22).

During 2010, plaintiff contends his procedural due process rights were violated when he was not given his semi-annual progress review as required by ADOC rules.  (*Id.*).  In March, 2011, when he received his annual progress review from defendant Philyaw, he told her that he had only been convicted of one attempted escape charge from a city jail in 1981, and requested that he be recommended for community custody and placement at a work-release center.

(*Id.*). Defendant "Philyaw responded, 'What, you think I want them (classification supervisor – Central Records) to think I am stupid!'" (*Id.*).

Defendant Philyaw said that she would note his complaint, but she would recommend only medium custody. (*Id.*). Defendants Brown, White, Dean, Tyner, and Coleman approved the recommendation, and plaintiff was told he could appeal their decision that permanently barred him from work release. (*Id.*). Plaintiff maintains that the defendants are required by Alabama law to examine his record of convictions and to show that he only had one conviction for attempted escape. (*Id.*). In addition, parole violators, like plaintiff, who have no new offenses and meet the eligibility requirements, are allowed to participate in all state-release programs. (*Id.*).

In 2011, plaintiff was not given his semi-annual progress review, and as of March 25, 2012, he had not been given his annual progress review. (*Id.* at 23). Believing that he would again be denied participation in the state's programs, he wrote to defendant Kim Thomas explaining his position and requesting an investigation and the removal of the bar, but he has not received a response. (*Id.*). Because plaintiff was barred from participating in release programs, he was incarcerated at FCC, a facility that was designed to house between 700 to 800 inmates but which housed 1268 inmates, which, he conclusorily alleges, subjected him to intense overcrowding, a violation of his Eighth Amendment rights. (*Id.*).

### 3. Requested Relief.

For relief, plaintiff requests his motion for appointment of counsel be granted; reconsideration of his motion for a temporary restraining order or, in the alternative, for a preliminary injunction; a declaratory judgment that

defendants violated his First and Fourteenth Amendment rights; an injunction requiring the submission of a plan to expand and update the FCC law library to accommodate the inmate population of 1268 and to cease from enforcing the present law library rules; an injunction requiring defendants to cease barring him from participating in minimum and community custody; an order barring defendants from retaliating against him for filing this lawsuit;[13] an award of compensatory and punitive damages against each defendant and their insurer; and any other relief to which he is entitled as a matter of law.  (*Id.* at 37).

**III.  Analysis of Denial-of-Access-to-Courts Claim.**

    **A.  Conspiracy Claim Under 42 U.S.C. §§ 1983, 1985, and 1986.**

Plaintiff alleges that non-defendant judges, Lockett, Main, Welch, Wise, McMillian, Cobb, Baschab, and Shaw, engaged in a "lengthy conspiracy" to violate his Fourth, Eighth, Thirteenth, and Fourteenth Amendment rights under §§ 1985 and 1986, from the time when plaintiff was initially convicted and sentenced. (*Id.* at 6-7). These non-defendants, who ruled on his criminal case, knew he could not receive a 30-year sentence for a Class C felony, which has 10 years' imprisonment as the maximum penalty. (*Id.* at 7). With respect to defendant prison officials, they are alleged to have "joined" the ongoing conspiracy between April 8, 2011 and July 15, 2011 to prevent plaintiff from exercising his First and Fourteenth Amendment right of access to courts, (*id.* at 6,

---

[13] The requests for relief preceding the footnote appear to be moot due to the recommended dismissal of this action and to plaintiff's release from custody at the end of his sentence.  *See Spears v. Thigpen,* 846 F.2d 1327, 1328 (11th Cir.)("[A]n inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred."), *cert. denied,* 488 U.S. 1046 (1989). However, due to the nature of this action's disposition, the issue of mootness is not being addressed.

9, 11-12), when they further restricted plaintiff's access to the law library in 2011. (*Id.* at 6 - 9).

The conspiracy allegations contain no factual information indicating that there was an agreement, meeting, or conversation. The only information about the conspiracy is the use of the word "conspiracy" or "coordinated effort" to violate plaintiff's First and Fourteenth Amendment right to access the courts. (*Id.* at 6-7, 11-12). The extent of the correctional defendants' involvement in the conspiracy appears to be based on the position each one holds and the actions taken in fulfilling his or her duties associated with his or her position, e.g., prison officials who create and implement policy for operating prisons changed the policy for access to the law library, which impacted plaintiff and, according to the tenor the allegations, was directed specifically at him.

In the absence of factual information describing the conspiracy, the agreement, and the actions taken to further it, the Court finds the plaintiff's conspiracy claims are based merely on a bald, conclusory assertion of conspiracy. And "'[w]holly conclusory allegations of conspiracy' must be disregarded." *Muhammad v. Bethel-Muhammad*, CA 11-0690-WS-B, 2012 WL 1854315, at *7 (S.D. Ala. 2012) (unpublished) (quoting *American Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010)) (addressing conspiracy claims under 42 U.S.C. §§ 1985 and 1986); *see Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984) (a § 1983 conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and is subject to dismissal). "*Twombly* and *Iqbal* require the proper pleading of a conspiracy." *Muhammad,* 2012 WL 1954315, at *4. A conspiracy claim needs sufficient "factual matter (taken as true) to suggest that an agreement was made." *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965; *see*

*Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir.) (to state a conspiracy claim it must be shown "that the parties 'reached an understanding' to deny the plaintiff his or her rights. . . . [and t]he conspiratorial acts must impinge upon the federal right[, i.e.,] the plaintiff must prove an actionable wrong to support the conspiracy"), *cert. denied,* 500 U.S. 932 (1991). "[L]awful parallel conduct fails to bespeak unlawful agreement. . . . and an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. . . . [W]hen allegations of parallel conduct are set out . . . , they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly,* 550 U.S. at 556-57, 127 S.Ct. at 1965.

In the present action, plaintiff has not properly pled a conspiracy claim. Moreover, considering the number of individuals involved, the decades over which the conspiracy allegedly existed, and allegations that are consistent with or parallel to duties that each person would perform in his or her position, the Court finds that there is little or no chance of success on such a conspiracy claim; therefore, the conspiracy claim alleged under 42 U.S.C. §§ 1983, 1985, and 1986[14] is frivolous. *See Bilal,* 251 F.3d at 1349; *Wilson v. Smith,* 567 F. App'x 676, 677 (11th Cir. 2014) (unpublished) (a claim is frivolous when it "has little or no chance of success"); *Hilario v. Marianna,* 561 F. App'x 821, 823 (11th Cir. 2014) (unpublished) (same).

**B. Claims Under §§ 1985 and 1986.**

By failing to advance a viable conspiracy claim, plaintiff's claims under §§ 1985 and 1986 likewise fail. Under § 1985, each of its subsections requires that a

---

[14]Because a § 1983 complaint form was used, the Court is addressing plaintiff's conspiracy claims under § 1983 in addition to §§ 1985 and 1986, which were alleged. (Doc. 19 at 6-7).

conspiracy be pled. 42 U.S.C. § 1985; *L.S.T., Inc. v. Crow,* 49 F.3d 679, 682 n.4 (11th Cir. 1995) ("The first clause proscribes plots to interfere with the performance of official duties by a federal officer. *See* 42 U.S.C. § 1985(1). The second addresses conspiracies to obstruct justice through the intimidation of parties, witnesses or jurors in judicial proceedings. *See* 42 U.S.C. § 1985(2).  .  .  .  [P]art three . . . prohibits agreements to deprive persons of their civil rights."). Plaintiff did not specify a § 1985 subsection under which he was proceeding, however. Due to the nature of his allegations, subsection 3 is the only possible subsection under which he may have a claim. In order to bring a successful claim under § 1985(3), he must allege: "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Childree v. UAP/GA CHEM, Inc.,* 92 F.3d 1140, 1147 (11th Cir.) (citing *Lucero v. Operation Rescue,* 954 F.2d 624, 627 (11th Cir. 1992)), *cert. denied,* 519 U.S. 1148 (1997).

The first element of § 1985(3) requires a conspiracy, which was found above to be deficiently pled as well as frivolous. And the second element of a § 1985(3) claim requires "a showing of some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Lucero, supra*). Invidious discriminatory intent must be affirmatively alleged, and a conclusory statement will not suffice. *Montford v. Moreno,* 2005 WL 1369563, at *7-*8 (11th Cir. 2005) (unpublished). And the defendants' actions must be "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory intent." *Burrell v. Board of Tr. of Ga. Military Coll.,* 970

F.2d 785, 794 (11th Cir.), *cert. denied,* 507 U.S. 1018 (1993). "This narrow intent requirement erects a significant hurdle[, and s]ection 1985(3) actions often stand or fall on the plaintiff's ability to establish the specific type of discriminatory animus behind the conspirators' actions." *Id.* "Both the Supreme Court of the United States and the Eleventh Circuit Court of Appeals have interpreted the second element to require race-, sex-, or an 'otherwise class-based, invidiously discriminatory animus.'" *Smith v. Thomas,* No. 2:12-CV-125-WKW, 2013 WL 800697, at *6 (M.D. Ala. 2013) (unpublished) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 101 (1971)). The present action contains no allegations of discrimination by a defendant and that the discrimination occurred on account of a protected, immutable characteristic such as race. *See Id.* at *6 - *7 (being a convicted felon is not a class upon which a § 1985(3) claim may rest).

The fourth element of a § 1985(3) claims states that "a person [must be] either injured in his person or property or deprived of any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3). This subsection requires  "proof of 'the violation of a serious constitutional right.'" *Cook v. Randolph Cnty., Ga.*, 573 F.3d 1143, 1157 (11th Cir. 2009) (quoting *Trawinski v. United Technologies,* 313 F.3d 1295, 1299 (11th Cir. 2002)). The list of these rights is short. *Trawinski,* 313 F.3d at 1299. And "an attempted deprivation of constitutional or statutory rights is not the same as an actual deprivation." *Cook,* 573 F.3d at 1157 (citing *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir. 1984)). In the instant action, for the reasons set forth below, no deprivation of a constitutional or statutory right has occurred so as to satisfy the fourth element of a § 1985(3) claim.

In light of the lack of a nonfrivolous conspiracy, of any allegations of invidious discrimination, and of a deprivation of a constitutional or statutory

right, a claim under § 1985(3) has very little or no chance of success and is, therefore, frivolous. *Bilal,* 251 F.3d at 1349. Thus, plaintiff's § 1985 claims are due to be dismissed.

The lack of a viable § 1985 claim precludes a claim under § 1986. *Park v. City of Atlanta,* 120 F.3d 1157, 1160 (11th Cir. 1997) ("The text of § 1986 requires the existence of a § 1985 conspiracy."); *Morast v. Lance,* 807 F.2d 926, 930 (11th Cir. 1987) ("Because a § 1986 action is predicated on a successful conspiracy action under § 1985, [plaintiff] has no cause of action under § 1986."). Accordingly, plaintiff's § 1986 claim is frivolous and is due to be dismissed.[15]

---

[15] Because the conspiracy claims are being recommended for dismissal, the underlying constitutional amendments that were allegedly violated have not been discussed.

However, the Court observes that plaintiff alleges that the conspiracy conducted by the non-defendants violated his rights under the Fourth, Eighth, Thirteenth and Fourteenth Amendments. (Doc. 19 at 6-7). Plaintiff offers little, if any, information to support these violations by the non-defendants. Inasmuch as the chief claim and information in this action concerns the denial of access to the courts, the violations of these amendments, except for the Fourteenth Amendment, can only be considered in light of a claim for denial of access to courts.

With respect to the Fourth Amendment, no explanation is offered for its invocation, nor are facts given in a plain statement on which a Fourth Amendment violation could be stated against the non-defendant judges included in the alleged conspiracy. *Cf.* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). Thus, the undersigned finds that a claim based on the Fourth Amendment would have little or no chance of success. *Cf. Ford v. Hunter,* 534 F. App'x 821, 826 (11th Cir. 2013) (addressing the limited applicability of the Fourth Amendment in a prison setting).

Regarding the Eighth Amendment, other courts have found that a denial-of-access-to-courts claim is inconsistent with the Eighth Amendment. *Watson v. Lockette,* 379 F. App'x 822, 826 n.4 (11th Cir.) (unpublished) (The Eighth Amendment, "which prohibits excessive bail or fines and the infliction of cruel and unusual punishment," is not applicable to a denial-of-access-to-courts claim), *cert. denied,* 562 U.S. 1046 (2010); *Howard v. Gee,* No. 8:12cv-2892-T-30EAJ, 2013 WL 25133, at *2 n.2 (M.D. Fla. Jan. 2, 2013) (unpublished) (an access-to-courts claim did not implicate the Eighth Amendment because "the constitutional protection of access to the courts is a due process right guaranteed by the Fourteenth Amendment and not the Eighth Amendment's cruel and

### C.  Substantive Claim for Denial of Access to Courts.

#### 1.  Applicable Law.

Plaintiff's primary claim in this action is for the denial of access to courts. The source for this right is found in the First, Fifth, and Fourteenth Amendments. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12, 122 S.Ct. 2179, 2187 n.12, 153 L.Ed.2d 413 (2002). And plaintiff alleges that the correctional defendants violated in his rights under the First and Fourteenth Amendments. (Doc. 19 at 9).

In order to state a claim for the denial of access to the courts, a prisoner is required to show that he suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996).  The actual-injury requirement is satisfied by a showing that the prisoner has been frustrated or impeded in prosecuting a direct appeal of his conviction, a habeas petition, or a civil rights action implicating a basic constitutional right,[16] and that the underlying action was nonfrivolous. *Id.* at 353-54, 116 S.Ct. at 2181-82; *Al-Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir.), *cert. denied,* 555 U.S. 820 (2008). "Impairment of any *other*

---

unusual punishment clause") (citation and quotation marks omitted). Similarly, a claim based on a violation of the Eighth Amendment would have little or no chance of success with respect to the non-defendants and the alleged conspiracy.

And the "Thirteenth Amendment has no application where a person is held to answer for a violation of a penal statute." *Omasta v. Wainwright,* 696 F.2d 1304, 1305 (11th Cir. 1983) (citations and quotation marks omitted); *see Apel v. McCool,* No. 3:07cv315/RV/EMT, 2007 WL 4592245 (N.D. Fla. Dec. 28, 2007) (unpublished) (finding that an inmate's Thirteenth Amendment claim based on defendants' refusal to send him a form which made him subject to their control was frivolous). Thus, such claim in this action would be frivolous.

Accordingly, the Court finds that any claim of plaintiff based on the Fourth, Eighth, or Thirteenth Amendment in this action with respect to a denial-of-access-to-courts claim is frivolous. With respect to the actual defendants to this action, the Court will address a denial-of-access-to-courts claim, *infra.*

[16] The Eleventh Circuit in *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998), extended this statement to include "direct or collateral appeals" of a criminal conviction.

litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355, 116 S.Ct. at 2182.

"The injury requirement means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts." *Cunningham v. District Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 2010). "[T]he underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher,* 536 U.S. at 415, 122 S.Ct. at 2187. "The complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a),[footnote omitted] just as if it were being independently pursued[.]" *Id.* at 417-18, 122 S.Ct. at 2188. "Like any other element of an access claim, the underlying cause of action . . . must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416, 122 S.Ct. at 2187. Moreover, the underlying cause of action "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher*, 536 U.S. at 415-16, 122 S.Ct. at 2187.

### 2. Lack of Nonfrivolous Underlying Action.

### a. Pleading Does Not Comply with Rule 8(a).

The Eleventh Circuit described plaintiff's claim as one for "prison officials restrict[ing plaintiff's] use of the prison law library in order to prevent [him] from pursuing a meritorious claim that his sentence of 30 years' imprisonment, imposed in 1983 after his conviction for possession of burglary tools, was unlawful." (Doc. 42 at 2-3). Specifically, plaintiff claims that he was injured in his

two petitions for the writ of habeas corpus that he filed directly with the Alabama Supreme Court in 2011, and their subsequent applications for rehearing. (Doc. 19 at 11). Plaintiff advises that in these two habeas corpus petitions, he "informed [the court] that his 30[-] year[] sentence under Alabama law was illegal and his incarceration on that sentence was illegal also." (*Id.*). Plaintiff describes his claims in his first and second habeas petitions as being "non-frivolous." (*Id.* at 17, 26, 30). Likewise, he claims his two applications for rehearing, one filed and one not filed, contained "non-frivolous" claims in which he argued no time limit exists for filing a habeas petition in Alabama, which if successful would have caused the withdrawal of the rulings on his habeas petitions. (*Id.* at 17, 20, 26, 27, 29, 30). Thus, plaintiff's underlying cause of action in his first and second habeas petitions to the Alabama Supreme Court (and in reality his two petitions for rehearing) is that his 30-year sentence is unlawful.

An access-to-courts claim requires that the underlying, that is, the predicate, action "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher*, 536 U.S. at 415-16, 122 S.Ct. at 2187. "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.* at 415, 122 S.Ct. at 2187.

The pleading of plaintiff's underlying claim for his denial of access to courts in this action does not comply with Rule 8(a) of the Federal Rules of Civil Procedure. Plaintiff must plead the underlying claim in such a manner to demonstrate that it is nonfrivolous, which of necessity requires that the claim comply with Rule 8(a) and give fair notice to a defendant. *Bryant v. Ruvin*, 477 F.

App'x 605, 606-07 (11th Cir. 2012) (unpublished) (affirming the *sua sponte* dismissal of an access-to-courts claim in which the required injury was not established due to the failure to provide information that gave fair notice to defendants or permitted the court to determine if the underlying claim was nonfrivolous). Moreover, *Iqbal* and *Twombly* require that the actual injury for a denial-of-access-to-courts claim be plausible. *Harrison v. County of Cook, Ill.,* 364 F. App'x 250, 252 (7th Cir. 2010) (unpublished).

As pled, plaintiff's underlying cause of action contained in his first and second petition for the writ of habeas corpus to the Alabama Supreme Court is vague and conclusory, particularly when he makes the legal conclusion that it is nonfrivolous. Whereas, he needs to *show* through his allegations that his underlying action is nonfrivolous, i.e., by showing, among others things, the legal requirements that he contends are needed for proper sentencing under the HFOA at the time he was sentenced and that his sentencing did not satisfy those legal requirements. Then, the Court may begin to consider whether his underlying claim is nonfrivolous. Furthermore, he compares his criminal case to a subsequent criminal case, rendered in 1987, about four years after his sentencing in 1983, in which the courts allegedly adopted the specific argument he presented to the courts and applied it to another criminal defendant. He does not identify the case in his present allegations, although in *Hines v. White,* CA 11-0648-WS-C (S.D. Ala. June 12, 2012),[17] his second federal habeas action and "independent action and/or motion to set aside judgment," he did identify the case of *Webb v. State,* 539 So.2d 343 (Ala. Crim. App. 1987), which was

---

[17] The Court received plaintiff's habeas action, *Hines v. White,* on the same day that it received this action, November 15, 2011.

distinguished in that action's report and recommendation, *see infra*. Neither does plaintiff give specific details about the unidentified case, nor explain how his case and the subsequent unidentified case are identical or similar. Furthermore, plaintiff does not explain how his hindered access impeded his ability to raise his claims. Accordingly, plaintiff failed to plead in a plausible manner, with some factual information, that he was injured in a nonfrivolous underlying action.

### b. Underlying Claim Is Frivolous.

### i. Application of *Cranford* Decision.

Notwithstanding plaintiff's deficient pleading of the underlying denial-of-access-to-courts claim, the undersigned will address the lack of arguable merit of plaintiff's underlying claim. The Eleventh Circuit's opinion in *Cranford v. Nevada Dep't of Corr.*, 398 F. App'x 540 (11th Cir. 2010) (unpublished), is instructive due to its factual similarities with the present action. In *Cranford,* the Nevada prisoner who was incarcerated in Florida pursuant to an interstate agreement was only able to access Nevada law through an interlibrary loan request, which required the sought-after materials be identified with specific case citations or statutes, which caused his many challenges to his conviction to be unsuccessful.  (*Id.* at 544-45). In particular, he did not have access to the Nevada rules and cases referred to by the Nevada county court in its denial of his motion to vacate and set aside his conviction. (*Id.* at 542). The law librarian informed him that FDC did not possess the Nevada legal materials that he requested to reply to the state's opposition to his motion. (*Id.*). He filed two notices of appeal of the denial to the Nevada Supreme Court, which resulted in the issuance of two notices of deficiency. (*Id.*). In both notices, the Nevada Supreme Court cited to a rule that was unavailable to him. (*Id.*).

31

Based on these facts, the prisoner filed a § 1983 complaint for the denial of access to courts, to which he attached his unsuccessful motion to vacate and set aside his conviction. *Id*. The attached motion reflected he was convicted in 1977 for first-degree murder and was sentenced to life imprisonment. *Id.* at 543. He argued that the prosecutor perpetrated a fraud on the court, and thereby his motion should not be dismissed as time-barred or successive. *Id*.

The prisoner also attached a copy of the state's response to the motion, which recounted his many post-conviction proceedings, namely, his unsuccessful direct appeal, four state habeas petitions, his motion to correct fraud on the court, and other post-conviction motions. *Id*. In its response, the state contended the prisoner's motion to vacate and to set aside was essentially a motion for reconsideration of his motion to correct fraud on the court. *Id*. Additionally, attached to the complaint were the state's responses to his pleadings which indicated the state relied on Nevada court rules and cases, and two, county-court deficiency notices were attached, showing that they relied on Nevada's appellate rules. *Id.* at 544.

The prisoner's complaint was recommended for dismissal, *sua sponte,* by the magistrate judge pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *Id.* The district court affirmed the report and recommendation and dismissed the action over the prisoner's objection. *Id.* On appeal, the Eleventh Circuit affirmed the district court's § 1915 dismissal on different grounds – the failure "to identify a nonfrivolous underlying claim." *Id.* at 548. The Eleventh Circuit found many of the prisoner's claims based on his motions and petitions were conclusory due to the failure to describe nonfrivolous claims contained in his motions and petitions and to explain how his inability to access Nevada legal materials hampered his

prosecution of claims he might have brought. *Id.* Thus, the dismissal of these claims was affirmed. *Id.*

The Eleventh Circuit observed that the only claim specifically described in the complaint and exhibits was based on the 2009 motion to vacate and to aside. *Id.* However, the Eleventh Circuit ruled that this claim "was frivolous, as it lacked arguable merit under Nevada state law for several reasons." *Id.* This motion was deemed by the Court to constitute a habeas petition governed by Nevada's habeas statutes. *Id.* at 548-49. Pursuant to these statutes, the motion was held to be untimely, because it was filed 30 years after the 1979 conviction and good cause was not given for the delay. *Id.* Additionally, the prisoner's claim in the motion was the same one that was raised unsuccessfully in his direct appeal, which the Court therefore deemed to be precluded from proceeding due to Nevada's law-of-the-case doctrine. *Id.* at 549. And due to the prisoner's filing of numerous post-conviction motions and petitions, the Court concluded that his motion to vacate constituted a successive habeas petition. *Id.* Lastly, the Court determined that to the extent that the fraud-on-the-court claim was a new claim, it would be procedurally barred as his motion to vacate did not contain assertions related to cause and prejudice or to a fundamental miscarriage of justice, i.e., his actual innocence. *Id.* For these reasons, the Eleventh Circuit decided that the prisoner's underlying claim lacked arguable merit under Nevada law and, as a consequence, the prisoner failed to allege that he was actually injured by the law library system in connection to his motion to vacate. *Id.*

In comparing *Cranford* to the present action, the Court was struck by the many similarities. Each plaintiff is litigating a decades-old conviction or sentence

after having utilized, usually more than once, every legal avenue available to challenge a conviction or sentence. Due to each prisoner's numerous challenges, each have encountered procedural bars on account of repetitive filings.

### ii. Plaintiff's Litigation History.

However, to determine if the present plaintiff was injured in a nonfrivolous claim, the underlying claim is first identified and then the claim's history and applicable law are examined. As stated earlier, plaintiff's underlying claim is his 30-year sentence is unlawful. Plaintiff previously presented this claim to several courts with only minor alterations. The history of plaintiff's legal challenges to his 1987 conviction for possession of burglar's tools and his 30-year sentence is contained in the supplemental report and recommendation in *Hines v. White*, CA 11-0648-BH-C, *supra*, which addresses plaintiff's claim that a fraud on the Court occurred in his first federal habeas proceeding, *Hines v. Johnson*, CA 86-0357-BH-S, when the state did not inform the Court of *Webb v. State*, 539 So.2d 352 (Ala. Crim. App. Apr. 28, 1987).  (Doc. 32).[18] The supplemental report and recommendation (Doc. 32) is attached to this report and recommendation.

A brief litigation history of plaintiff's 1987 conviction and 30-year sentence, based on a review of the supplemental report and recommendation, is set out below. On December 5, 1983, plaintiff was convicted of possession of burglar's tools and sentenced to 30 years' imprisonment. *See Hines v. White*, CA 11-0648-BH-C, Doc. 32 at 4. In the criminal trial, plaintiff admitted on cross-examination and re-direct examination to two prior convictions obtained through guilty pleas. (*Id.* at 5). The Alabama Court of Criminal Appeals affirmed

---

[18]The first report and recommendation in *Hines v. White, supra,* contains a less extensive litigation history because it recommended the dismissal of the habeas petition as an unlawful successive petition.  (Doc.  15).

his conviction and sentence on April 10, 1984, with a certificate of final judgment of affirmance being issued on May 1, 1984, *Hines v. State,* 453 So.2d 7 (Ala. Crim. App. 1984) (table). (*Id.*). On May 7, 1984, plaintiff filed a petition for writ of error coram nobis, claiming he was denied ineffective assistance of counsel and his speedy trial rights. (*Id.*). The Alabama Court of Criminal Appeals affirmed the dismissal of plaintiff's speedy trial claim, but it remanded the claim for ineffective assistance of trial and appellate counsel for an evidentiary hearing, *Hines v. State,* 461 So.2d 50 (Ala. Crim. App. 1984). (*Id.*). During the evidentiary hearing on February 14, 1985, plaintiff argued that trial counsel was ineffective because counsel did not object to the 30-year sentence that was imposed even though no notice had been given that plaintiff would be treated as a habitual offender. (*Id.* at 6). Plaintiff's trial counsel testified at the hearing that both he and plaintiff had notice of all prior felony convictions. (*Id.* at 6-8). Based, in part, on this testimony, the trial court, on February 22, 1985, denied the error coram nobis petition, finding it to be without merit. (*Id.* at 8). On the remand's return, the Alabama Court of Criminal Appeals affirmed the denial of the petition, *Hines v. State,* 489 So.2d 9 (Ala. Crim. App. 1986). (*Id.* at 9).

On April 10, 1986, plaintiff filed his first, federal habeas corpus petition seeking relief under 28 U.S.C. § 2254, *Hines v. Johnson,* CA 86-0357-BH-M (S.D. Ala. Dec. 5, 1988). (*Id.*). In the petition, one of the twelve grounds of ineffective assistance of counsel identified by plaintiff was trial counsel was ineffective when he failed to object at the sentencing phase of his trial. (*Id.*). Later in this habeas action, plaintiff explained the basis for his sentence was not provided by the trial court or shown in its records and, therefore, he assumed that the sentence was based on counsel's assertion of prior convictions or his admission

of prior convictions. (*Id.* at 11). Through many failures of trial counsel, plaintiff contended, he had been denied effective assistance of counsel at sentencing. (*Id.*). Nevertheless, a report and recommendation was entered on October 31, 1988, finding that plaintiff's sentence comported with Alabama law, thereby leaving trial counsel with no meritorious claim on which to base an objection. (*Id.* at 13). The report and recommendation noted that plaintiff's "claim revolves around his assertion that his prior convictions were used to enhance his sentence and that if he had known they would be used in that manner, he would not have admitted to them[,]" and that regardless of his admissions, they were a matter of record which would be used by the judge in determining a sentence, in addition to another felony conviction of his that was on the record. (*Id.*).

In plaintiff's objections to the report and recommendation in his first federal habeas, he did not mention his claim for ineffective assistance of trial counsel at sentencing. (*Id.* at 14). On December 5, 1988, the report and recommendation was adopted by the district court. (*Id.*). Subsequently, on March 29, 1988, the Eleventh Circuit denied plaintiff's application for a certificate of probable cause and his motion to appeal *in forma pauperis.* (*Id.*).

From March 1989 to December 6, 2001, plaintiff was on parole until he was picked up for a parole violation. (*Id.* at 14, n.8). During this period of time, plaintiff apparently had no interest in attacking his conviction and sentence. (*Id.*).

On May 9, 2003, plaintiff filed his first Rule 32 petition "alleging his sentence exceeded the maximum authorized by law since the trial court lacked jurisdiction to impose a 30-year sentence based on a conviction of a Class C felony where the state did not invoke the provisions of the HFOA prior to trial,

after conviction, or before sentencing and, further, that due process and the interests of justice required a redetermination of his ineffective assistance of counsel claim." (*Id.* at 14). On May 21, 2003, the trial court summarily dismissed his petition without requiring an answer from the state. (*Id.* at 15).

The Alabama Court of Criminal Appeals affirmed this dismissal on September 19, 2003, *Hines v. State,* 886 So.2d 190 (Ala. Crim. App. 2003) (table). (*Id.*). In finding that plaintiff's appeal had no merit, the court held that "the State did not have to prove [plaintiff's] prior convictions for sentence-enhancement purposes" as "he took the stand at trial and admitted his prior felonies." (*Id.*). It further ruled that "this claim [is] precluded from appellate review, as it could have been raised at trial or on appeal but was not," citing to Rule 32.2(a)(3) and (5) of the Alabama Rules of Criminal Procedure.[19] (*Id.*). And the statute of limitations in Rule 32.2(c)[20] was found also to preclude plaintiff's claim. (*Id.*).

---

[19] Rule 32.2 of the Alabama Rules of Criminal Procedure provides:

> **(a) Preclusion of Grounds.** A petitioner will not be given relief under this rule based upon any ground:
>
> . . . .
>
> (3) Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or
>
> . . . .
>
> (5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).

ALA.R.CRIM.P. 32.2(a)(3)&(5)(2002).

[20] Rule 32.2(c) of the Alabama Rules of Criminal Procedure provides:

> **Limitations Period.** Subject to the further provisions hereinafter set out in this section, the court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed: (1) In the case of a conviction appealed to the Court of Criminal Appeals, within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala.R.App.P.; or (2) in the case of a conviction not appealed to the Court of Criminal Appeals, within one (1) year after the time for filing an appeal

Plaintiff's application for rehearing was denied, *Hines v. State,* 897 So.2d 1251 (Ala. Crim. App. 2003) (table), and the subsequent petition for writ of certiorari was denied on January 16, 2004, *Ex Parte Hines,* 899 So.2d 317 (Ala. 2004) (table). (*Id.*).

On December 18, 2006, plaintiff filed a second Rule 32 petition. (*Id.*). On March 6, 2007, the trial court granted the state's motion to dismiss. (*Id.*). There is no indication that an appeal was taken. (*Id.*).

Then, on March 9, 2010, plaintiff filed his third Rule 32 petition, which was summarily denied. (*Id.* at 16). In affirming the trial court's denial of the petition as successive on August 13, 2010, the appellate court recalled the plaintiff "raised a similar claim in a previous Rule 32 petition," which the trial court had denied, and on appeal, it had affirmed the trial court's decision. (*Id.*). Plaintiff's application for rehearing was denied, and his petition of writ of certiorari was denied on October 8, 2010. (*Id.*).

Soon thereafter, plaintiff filed an application in the Eleventh Circuit Court of Appeals seeking an order authorizing a second or successive federal habeas

---

lapses; provided, however, that the time for filing a petition under Rule 32.1(f) to seek an out-of-time appeal from the dismissal or denial of a petition previously filed under any provision of Rule 32.1 shall be six (6) months from the date the petitioner discovers the dismissal or denial, irrespective of the one-year deadlines specified in the preceding subparts (1) and (2) of this sentence; and provided further that the immediately preceding proviso shall not extend either of those one-year deadlines as they may apply to the previously filed petition. The court shall not entertain a petition based on the grounds specified in Rule 32.1(e) unless the petition is filed within the applicable one-year period specified in the first sentence of this section, or within six (6) months after the discovery of the newly discovered material facts, whichever is later; provided, however, that the one-year period during which a petition may be brought shall in no case be deemed to have begun to run before the effective date of the precursor of this rule, i.e., April 1, 1987.

ALA.R.CIV.P. 32.2(c) (2002).

petition. (*Id.*). In January 2011, the Eleventh Circuit denied his application finding that plaintiff had "failed to make a *prima facie* showing of the existence of either of the grounds set forth in § 2244(b)(2)[.]" (*Id.*). As recorded in its opinion, the Eleventh Circuit found that plaintiff sought review of "four . . . claims attack[ing] the application of the [HOFA] enhancement and his overall sentence." (*Id.* at 17).

Then, on November 15, 2011, plaintiff, undeterred, filed *Hines v. White*, CA 11-0648-WS-C, a § 2254 habeas petition/"Independ[e]nt Action and/or Motion to Set Aside Judg[]ment," for the purpose of setting aside the judgment in his first federal habeas proceeding for fraud upon the court. (*Id.* at 17). Plaintiff claimed that in his first federal habeas proceeding, *Hines v. Johnson,* CA 86-0357-BH-M, the state had concealed the decision in *Webb v. State,* 539 So.2d 352 (Ala. Crim. App. Apr. 28, 1987). (*Id.* at 22). The Court, however, observed that in plaintiff's prior application to the Eleventh Circuit for leave to file a second or successive habeas corpus petition, he "argued that *Webb* was not available to him when he filed his first habeas corpus complaint with this Court in 1986." (*Id.* at 21 n.10). The Court commented that plaintiff being "ever the whirling dervish, . . . now conveniently regroups to contend that the respondent perpetuated a fraud on this Court by 'concealing' *Webb* from the court." (*Id.).* In ruling on plaintiff's claim, the Court found that the state did not perpetuate a fraud on the Court, and that at the time of plaintiff's sentencing, Alabama had no requirement for notice where prior felonies were admitted in trial testimony. (*Id.* at 22-24).

In addressing whether a fraud on the court occurred in plaintiff's first federal habeas petition, the Court examined plaintiff's 30-year sentence with respect to the legal requirements for sentencing under the HFOA on December 5,

1983, and the applicability of the *Webb* opinion.[21]  In the supplemental report and

recommendation entered on September 11, 2012 (which is after plaintiff filed his

amended complaint in this § 1983 action), the Court ruled:

> There is simply no injustice here, sufficiently gross, to demand a departure from rigid adherence to *res judicata*.  Instead, what petitioner is asking this Court to swallow whole, solely in order to skirt the requirements of 28 U.S.C. § 2244(b)(3)(A), [footnote omitted], are conclusory allegations, devoid of any probative facts, that the respondent "concealed" from this Court in *Hines v. Johnson,* CA 86-0357-BH, the Alabama Court of Criminal Appeals' decision in *Webb v. State,* 539 So.2d 3[43] (Ala.Crim.App. Apr. 28, 19[8]7), a case which Hines claims "adopted verbatim [the] legal argument that was before [this] Court [in *Hines v. Johnson, supra.*]"  (See Doc. 23 , at    .)  It is impossible, in the first instance, for the undersigned to perceive how the respondent "concealed" the *Webb* case from this Court, [footnote omitted] even taking petitioner at his word that the respondent received an advanced copy of that case on April 17, 1987, since Magistrate Judge Milling did not pen his report and recommendation until well over eighteen (18) months later on October 31, 1988 and, therefore, easily could have discovered this case with a modicum of research. [footnote omitted]  In other words, a finding by this Court that it constitutes a fraud for a party not to submit every case about which he/she/it has knowledge, and which this Court could easily discover itself by performing basic legal research, would enlarge the bounds of the egregious conduct necessary to constitute a fraud on the court beyond that contemplated by the Eleventh Circuit.  Thus, the respondent simply did not "hide" or "conceal" *Webb* from this Court and, therefore, no fraud was perpetuated on this Court by the respondent in *Hines v. Johnson, supra.*
>
> That the foregoing conclusion is correct is apparent from the record of the proceedings in *Hines v. Johnson,* as previously set forth at some length.  First, in his habeas corpus complaint filed in that case, Hines only set forth in conclusory fashion that his attorney provided ineffective assistance during sentencing and when he finally expounded on his claim in his "Demand for Judgment" [footnote omitted] this particular claim bore no resemblance to the argument presented to the trial court during his error coram nobis hearing and certainly placed neither this Court nor the respondent on notice that the legal arguments he was making were identical to the legal argument made in *Webb*. [footnote omitted]  Indeed, a

---

[21] The other claims in *Hines v. White, supra,* were deemed successive.  (Doc. 3 at 4 n.3).

comparison of the two cases reveals several glaring differences, the least of which, as alluded to earlier, is that *Webb* was not decided in the context in which Hines was asking this Court to decide his habeas case, that is, with respect to a claim of ineffective assistance of counsel. In addition, unlike *Webb*, where the defendant only admitted to his prior felony conviction on cross-examination, 539 So.2d at 351-352 & 353, Hines not only admitted his prior convictions on cross-examination but, as well, admitted those convictions on redirect examination and testified on direct examination to being in the penitentiary prior to being charged with the instant crime. Given the differences between the two cases, there was simply no obligation on the respondent's part to bring *Webb* to the attention of the Court, and certainly no "fraud" perpetuated on this Court for failing so to do. [Footnote omitted.]

**B.   Underlying Constitutional Violation**.   Even had petitioner been able to satisfy the arduous requirements of fraud on the court, there was no (nor could there reasonably be considered to have been an) underlying constitutional violation in connection with the use of the petitioner's prior convictions to sentence him as a habitual offender. This is very simply because at the time of Hines' conviction and sentence on December 5, 1983, [footnote omitted] Alabama law provided that there was no requirement for notice under Rule 6(b)(3)(ii) of the Alabama Rules of Criminal Procedure where the defendant admitted to prior felony convictions during his trial testimony. *See Wilson v. State,* 428 So.2d 197, 201 (Ala. Crim. App. Mar. 1, 1983) (in a case in which the defendant was sentenced immediately after the jury returned its guilty verdict, the Alabama Court of Criminal Appeals held that "[w]here the accused admits the prior felony conviction in this testimony. . . , the necessity for the notice is obviated.") [footnote omitted]. In this case, Hines admitted two prior felony convictions in his testimony on re-direct examination, thereby obviating the necessity for notice. Because his trial attorney had nothing to which to object at sentencing, he cannot be said to have rendered constitutionally ineffective assistance in violation of the Sixth Amendment to the United States Constitution. [Footnote omitted.]

Doc. 32 at 21-24.

In addition, the report and recommendation chronicled the evolution of

proving prior convictions for application of the HFOA, when it expressed:

[I]t is this Court's task to adjudge cases that are presented for adjudication and in order to accomplish this task the Court necessarily performs its own independent research. And it would have been relatively simple for this Court to find *Webb,* as well as a plethora of other cases involving Alabama's HFOA and, more

specifically, the proper methods for proving prior convictions. This is because it was in the early and mid 1980's (that is, during the time petitioner was convicted and sentenced for possession of burglar's tools) that the proper methods for proving prior convictions *evolved* inasmuch as the HFOA, as initially passed, did not set forth such proper methods. *See Jones v. White,* 992 F.2d 1548, 1560-1570 (11th Cir. 1993). Indeed, it was not until mid-1987 that "the Alabama legislature codified the proper methods for proving a prior conviction for purposes of enhancement under the HFOA[,]" *id.* at 1570, and after enactment of this statute, "Alabama courts held that prior convictions could be proved by a certified minute entry, a certified judgment entry, or by the defendant's admission of the prior conviction." *Id.,* citing *Brooks v. State,* 520 So.2d 195, 200 (Ala. Crim. App. 1987).

Doc. 32 at 22 n.12.

After the supplemental report and recommendation was adopted (Doc. 36), plaintiff's second federal habeas action was dismissed, and the certificate of appealability was denied. (Docs. 36, 37). The Eleventh Circuit subsequently denied him a certificate of appealability and leave to proceed *in forma pauperis*. (Doc. 39). Next, his petition for the writ of certiorari to the United States Supreme Court was denied. (Doc. 40).

Like the plaintiff in *Cranford*, the legal history surrounding plaintiff's 30-year sentence is lengthy. Due to plaintiff 's constant challenges to his sentence through the decades, he, too, encountered procedural obstacles in bringing his claim that his 30-year sentence was unlawful. The state courts found in plaintiff's first Rule 32 petition that the claim should have been raised at trial or on direct appeal and therefore was precluded, and that it was also barred by the statute of limitations. Doc. 1 at 165-66 (citing ALA.R.CRIM.P. 32.2(a)(3) &(5); 32.2(c)). In plaintiff's third Rule 32 petition, the state courts found that the

petition was successive.  *Id.* at 167-58 (citing ALA.R.CRIM.P. 32.2(b)).[22]  Then, in plaintiff's state habeas corpus petitions, the state courts found that they were untimely.  *Id.* at 45; *Id.* at 50 (citing ALA.R.APP.P. 21(a)); *Id.* at 53 (citing to ALA.R.APP.P 21(e)(2)).  Furthermore, the Eleventh Circuit denied his application for authorization to consider a second or successive petition for a writ of habeas corpus.  *Hines v. White,* CA 11-0648-WS-C, Doc. 32 at 16, citing 28 U.S.C. § 2244(b).  The rulings by these courts would be the same if plaintiff were to bring another challenge to his 30-year sentence before them.

Thus, prior to filing this action, the courts, both state and federal, completely rejected plaintiff's underlying claim that his 30-year sentence is unlawful.  Considering the many different means by which plaintiff sought review for his underlying claim, there appear to be no remaining viable avenues in state or federal court for plaintiff to have his 30-year sentence declared unlawful.  And, as noted before in the report and recommendation in *Hines v. White,* CA 11-0648-WS-C, plaintiff was properly sentenced according to the law at the time of his sentencing.  Doc. 32 at 24-25.  Therefore, this leads to the

---

[22] Rule 32.2(b) of the Alabama Rules of Criminal Procedure provides:

> **(b) Successive Petitions.** If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or guilty-plea proceeding shall be treated as successive petitions under this rule. The court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner. A successive petition on different grounds shall be denied unless (1) the petitioner is entitled to relief on the ground that the court was without jurisdiction to render a judgment or to impose sentence or (2) the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

ALA.R.CRIM.P. 32.2(b)(2002).

indisputable conclusion that plaintiff's underlying claim that his 30-year sentence is unlawful lacks arguable legal merit and is, therefore, frivolous. *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831-32. Thus, plaintiff has not shown and is not able to show that was injured in a nonfrivolous action.

### iii. Consideration of *Heck v. Humphrey.*

Aside from the foregoing reasons that the underlying claim is frivolous, the decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), would also preclude this Court from ruling on plaintiff's damages claim that his 30-year sentence is unlawful. The decision in *Heck* requires that

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,[footnote omitted] a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed,[footnote omitted] in the absence of some other bar to the suit.[footnote]

*Id.* at 486-87, 114 S.Ct. at 2372-73. The reasoning for the *Heck* rule is to avoid a collateral attack in a civil suit on a criminal judgment and the potential for conflicting judgments arising from the same transactions or events, and to achieve finality in criminal judgments. *Id.* at 484, 114 S.Ct. at 2371.

The decision in *Heck* was applied to disallow a denial-of-access-to-courts claim in *Burd v. Sessler,* 702 F.3d 429 (7th Cir.), *cert. denied,* 133 S.Ct. 2808 (2013), which held,

> Because the underlying claim for which [the plaintiff] sought access to the prison law library was the opportunity to withdraw his guilty plea, he cannot demonstrate the requisite injury without demonstrating that there is merit to his claim that he should have been able to withdraw the plea. Such a showing necessarily would implicate the validity of the judgment of conviction that he incurred on account of that guilty plea. The rule in *Heck* forbids the maintenance of such a damages action until the plaintiff can demonstrate his injury by establishing the invalidity of the underlying judgment. Accordingly, we conclude that [the plaintiff] has not established a basis for recovering any type of damage relief under § 1983.

*Id.* at 434-35, *see John v. New York Dep't of Corr.,* 130 F. App'x 506, 508 n.1 (2d Cir. 2005) (unpublished) (same); *Amaker v. Weiner,* 179 F.3d 48, 51 (2d Cir. 1999) (same); *Hoard v. Reddy,* 175 F.3d 531, 534 (7th Cir. 1999) (same), *cert. denied,* 528 U.S. 970 (1999).

Similarly, it appears that if this Court was to rule favorably for plaintiff on his denial-of-access-to-courts claim, its ruling would include a finding that plaintiff's underlying claim is nonfrivolous. Such a finding would affect the validity of plaintiff's sentence, which is a result prohibited by *Heck.* Thus, to avoid the application of *Heck*'s bar, plaintiff must show that the judgment imposing his sentence has been invalidated in a manner prescribed by *Heck. Heck,* 512 U.S. at 487, 114 S.Ct. at 2371. Plaintiff did not make this showing, and it does not appear that he can make this showing in light of the history of the legal proceedings surrounding his conviction and sentence conveyed in his allegations and the Court's review of his cases on its docket, particularly in his last unsuccessful habeas action, *Hines v. White,* CA No. 11-0648-WS-C, *supra.* Thus,

the application of *Heck* to plaintiff's underlying claim is an additional reason that plaintiff's underlying claim is frivolous.  In view of the absence of a nonfrivolous underlying claim, plaintiff's denial-of-access-to-courts claim lacks arguable legal merit and is, therefore, frivolous.  *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831-32.

### 3.  Separate Consideration of Second Habeas Petition and Applications for Rehearing.

It would seem that the underlying claim - plaintiff's 30-year sentence is unlawful - would be the underlying claim for all purposes in the Court's examination of plaintiff's claim that he was denied access to the courts, that is, for both state habeas corpus petitions and the applications for rehearing, because that is the ultimate determination sought by plaintiff and it underlies all of the subsequent state filings.  Nonetheless, the decision in *Cranford* appears to indicate that the denial of plaintiff's second state habeas petition and applications for rehearing should be addressed separately as well.  *See Cranford,* 398 F. App'x at 549-50 (in addition to the claim that inadequate library system actual injured the inmate in connection to his motion to vacate, the Eleventh Circuit addressed the two deficiency notices from the Nevada Supreme Court which cited to a rule to which plaintiff did not have access).

Plaintiff's pleading of this aspect of his denial-of-access-to-courts claim is deficient.  Plaintiff's allegations are not sufficient to give notice to a defendant or to the Court that a defendant caused an actual-injury in plaintiff's applications for rehearing or his second habeas petition.  The type of injury that plaintiff must demonstrate requires details containing information of specific dates.  As presented, there is an absence of information that has created gaps in his allegations, which have prevented a complete or plausible claim or claims from

46

being alleged.  That is, a time line indicating when events occurred that impacted his belated filing or inability to file is not conveyed by his allegations.[23]  In particular, due to him claiming that his incoming mail was delayed, it is necessary for plaintiff, at least, to allege when he received an order and the date on the envelope, and because he alleged his outgoing mail was delayed, he should have alleged the date when he gave a pleading to a prison official for mailing and when the court indicated it was received.  Nor does plaintiff provide the dates and times in which he had access and was denied access to the law library and how his limited access caused him an actual injury in a nonfrivolous, arguable underlying claim.  The only time elements mentioned in his allegations with respect to these filings are the dates of the contested court orders.  Without information about the dates when certain events transpired, the Court cannot conclude that a delay or limited access to the law library caused him an actual injury in a nonfrivolous, arguable underlying claim.  Accordingly, plaintiff's allegations regarding an actual injury fail to comply with Rule 8(a)'s pleading requirement that fair notice be given of a plausible claim.  *Twombly, supra.*

Turning to the other aspect of a denial-of-access-to-courts claim with respect to his applications for rehearing and his second habeas petition, plaintiff did not show that he has a nonfrivolous, arguable underlying claim.  The argument made by plaintiff is no time limit exists for filing a habeas petition.

---

[23] For example, attached to the original complaint is an Alabama Court of Criminal Appeals' order entered, on August 22, 2011, in response to plaintiff's motion to clarify its order dated July 27, 2011, dismissing his first habeas petition.  (Doc. 1 at 50).  After explaining its dismissal order to plaintiff, the Alabama Court of Criminal Appeals granted plaintiff 14 days to file an application for rehearing.  (*Id.*).  In his amended complaint, no mention is made by plaintiff that he filed this motion or received an extension of time.

(Doc. 16 at 17).  Plaintiff is taking issue with the Alabama Court of Criminal Appeals' decision on his first habeas petition that found his petition was untimely.[24]  (*Id.* at 16-17).  He then alleges that he was prevented from filing a timely application for rehearing to contest the erroneous ruling on his first habeas petition.  (*Id.* at 17).  With respect to the underlying claim in his first and second habeas petitions, he alleges that "both of plaintiff['s] habeas corpus [were] dismissed that contained non-frivolous claims that his 30 years['] sentence and incarceration on said sentence was illegal."  (*Id.*).

As the Court discussed above, plaintiff's claim that his 30-year sentence is unlawful lacks arguable legal merit and is therefore frivolous.  And plaintiff's argument that no time restrictions exist for filing a habeas petition is likewise without arguable legal merit and is frivolous.  The Alabama Court of Criminal Appeals' opinion ruling on plaintiff's first habeas petition addressed this argument.  (Doc. 1 at 45).  Even though plaintiff does not refer to the precise ruling by the Alabama Court of Criminal Appeals in his amended complaint, a copy of its opinion is attached to the original complaint.  (*Id.*).

The Alabama Court of Criminal Appeals, in finding that plaintiff's first habeas petition was untimely filed, cited to the case of *Ex parte Davis*, 834 So.2d 830 (Ala. Crim. App. 2002).  In *Davis*, the court dismissed a petition for the writ of mandamus because the petition did not comply with Rule 21(a) of the Alabama Rules of Appellate Procedure, which holds, in part:

> *The petition shall be filed within a reasonable time. The presumptively reasonable time for filing a petition seeking review of an order of a trial court shall be the same as the time for taking an appeal. If a petition is filed outside this presumptively reasonable time, it shall include a statement of*

---

[24] The Court observes that plaintiff did not allege that he was impeded in any manner in the preparation and filing his first state habeas corpus petition.

> *circumstances constituting good cause for the appellate court to consider*
> *the petition, notwithstanding that it was filed beyond the presumptively*
> *reasonable time.*   (Emphasis in original)

*Id.* at 832.  The court noted "Rule 21(a), was amended effective September 1, 2000, to provide that [a] writ of mandamus and prohibition must be filed within a presumptively reasonable time.  Prior to this amendment, no provision in Rule 21 stated a specific time within which a petition for a writ of mandamus or prohibition was to be filed."  *Id.* at n.3.

The *Davis* court found the filing of the petition 133 days after the denial of the *in forma pauperis* request was "beyond the presumptively reasonable time period designated in Rule 21(a), Ala.R.App.P.," which is the 42-day period for filing an appeal.  *Id.* at 832.  Finding that the petition did not contain "a statement of circumstances constituting good cause" and that petitioner's criminal litigation history began fifteen years before with his conviction, appeal, and post-conviction proceedings, the court discerned the petitioner's Rule 32 petition would more than likely be barred as successive and, therefore, dismissed the petition.  *Id.* at 833.

Thus, plaintiff's contention that the filing of a habeas petition need only be within a reasonable time is not based on the current appellate rule that prescribes a reasonable time as being the time period for filing an appeal or, giving plaintiff the benefit of the doubt, his argument is based on only a portion of the rule's language.  *See Ex parte Stokes,* 990 So.2d 852, 856 (Ala. 2008) (relying on Rule 21(a)(3) and (c), the court found the habeas petition filed on May 23, 2007 was filed too late to challenge the excessiveness of the bond imposed on April 8, 2006).

Because plaintiff sought to challenge the Alabama Court of Criminal Appeals' decision that his first habeas petition was untimely based on an incorrect statement of the law (i.e., the law only requires reasonableness), and his claim in both his first and second habeas petition is his 30-year sentence is unlawful, which the Court has determined to be frivolous, the Court concludes that plaintiff failed to show that his second habeas petition and his applications for rehearing contained nonfrivolous claims. Merely alleging that he had a nonfrivolous claim or stating that his sentence was illegal is not sufficient to show that the state court filings in which he was injured were nonfrivolous. Facts needed to be alleged that would permit the Court to conclude that the filings in state court were nonfrivolous, and plaintiff did not allege such facts.

Moreover, in light of the Court's finding that plaintiff's underlying claim - his 30-year sentence is unlawful - does not present a nonfrivolous, arguable claim, particularly in light of the application of *Heck v. Humphrey, supra,* plaintiff's claims based on his applications for rehearing and his second habeas petition are found to be lacking in legal merit and are, therefore, frivolous. *See Hall v. Secretary for Dep't of Corr.,* 304 F. App'x 848, 850 (11th Cir.) ("Because Hall's motion for a rehearing, which he alleged was untimely filed because of the actions of the defendants [misdirecting his legal mail], was discretionary and related to a motion to correct an illegal sentence that already had been considered on the merits, we find that the district court did not err in finding that he failed to allege an actual injury."), *cert. denied, Hall v. McNeil,* 556 U.S. 1261 (2009); *Cox v. Biscoe,* 477 F. App'x 225, at 226-27 (5th Cir.) (unpublished) (ruling the plaintiff did not state a claim for denial of access to courts when he complained of interference with his legal mail that prevented him from filing a

timely appeal of the dismissal of his § 2254 action, because plaintiff failed to show that his lost appeal contained a nonfrivolous issue), *cert. denied*, 133 S.Ct. 934 (2013); *Caviness v. Puckett*, No. 4:10-cv-00093-FKB, 2012 WL 961217, at *2 (S.D. Miss. Mar. 21, 2012) (unpublished) (ruling that any delay in the mailing of the plaintiff's motion for rehearing, which was held to be untimely filed, did not prejudice the plaintiff because the motion did not contain a nonfrivolous claim and therefore the plaintiff failed to state claim for denial of access to the courts) *Guest v. United States*, 2015 WL 5157185, at *1 (11th Cir. 2015)(unpublished) (finding prisoner's mere allegation - had his motion for reconsideration been timely filed with the appeals court, it would have been granted - to be insufficient to show a colorable, nonfrivolous underlying claim).

### 4.  Federal Court Actions.

In addition to alleging that he was injured in his state-court actions, plaintiff briefly alleges the removal of other circuits' decisions, which occurred when Westlaw was replaced with Lexis, deprived him of other circuits' case law that he would have "rel[ied] on to support his claim in this complaint as well as his pending habeas corpus filed [in] CV-11-0648-WS-C."  (Doc. 19 at 15).  Plaintiff listed five removed cases with a brief description of their holdings, stating he would have used them to find other cases.  (*Id.* at 16).  None of these cases are from the Eleventh Circuit or the district courts within this circuit, even though plaintiff's statement of their holdings indicates that they may relate to his claims in this action.  Additionally, plaintiff mentions that his access was removed to a Ninth Circuit case, *Phelps v. Alemda*, 539 F.3d 1120 (9th Cir. 2009), which he needed to support his second federal habeas petition and Rule 60(b) motion.  (*Id.* at 16).

With regard to the present action and *Hines v. White,* CA 11-0648-WS-C, *supra,* plaintiff's statements are quite general and do not contain allegations showing a specific injury or prejudice that plaintiff suffered in as a result of the change in legal resources in the law library, or that either action is nonfrivolous. Moreover, given the manner in which this action and *Hines v. White* have been resolved, the Court cannot discern how access to more cases would have changed the adverse outcomes for plaintiff. Furthermore, the rule from *Lewis* holds "that the State is not required to enable the prisoners to *discover* grievances, and to *litigate effectively* once in court." *Lewis,* 518 U.S. at 354, 116 S.Ct. at 2181 ("To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires.") (emphasis in original). Inmates are not guaranteed "the wherewithal to transform themselves into litigating engines capable of filing everything[.]" *Id.* at 355, 116 S.Ct. at 2182. The fact that the state does not "do something that might help bolster a prisoner's chances of success" does not violate the right of access to courts. *Cunningham,* 592 F.3d at 1273-74. Thus, the Court finds that with regard to this action and to *Hines v. White, supra,* plaintiff does not identify a specific actual injury. Due to the only assertion being about not having additional resources and to there being no showing of an underlying nonfrivolous action, (i.e., *Hines v. White* was dismissed and this action is recommended for dismissal), plaintiff's claim for a denial of access to courts based on the removal of other circuits' cases fails. Accordingly, plaintiff's claim based on the removal of other circuits' cases lacks an arguable basis and is, therefore, frivolous. *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831-32.

### 5. Destruction of Trial Transcript.

### a. Denial-of-Access-to-Courts Claim.

Plaintiff alleges that "defendant" ordered plaintiff's mail to be monitored, which resulted in his trial transcript from the Alabama Department of Archives, mailed in May, 2011, to be removed and destroyed.[25]   (*Id.* at 16).   Plaintiff has not identified the specific defendant who issued this order; rather, he lists several of them, Thomas, Deloach, White, Myers, Hetrick, and Raybon.   (*Id.* at 25-31).   This claim's only connection to a claim for denial of access to courts are the statements that the transcript "contained documentary evidence that plaintiff['s] (30) year sentence was illegal," (*id.* at 16), and that "the removal of plaintiff['s] trial transcript and its destruction violated [his] access to court." (*Id.* at 30; *see Id.* at 29, 31).   Plaintiff does not identify the "documentary evidence," nor allege that it is unique.   And plaintiff does not state that he suffered an injury or prejudice in a nonfrivolous action due to the loss of the first transcript.   Considering the vagueness with which he pled this claim and the absence of a nonfrivolous action being identified, a denial-of-access-to-courts claim based on these allegations has little or no chance of success and is, therefore, frivolous.   *Bilal,* 251 F.3d at 1349.

---

[25] Attached to the original complaint is a copy of the letter from the Alabama Department of Archives and History to plaintiff on July 15, 2011, recounting the department's actions with respect to his transcript – on May 31, 2011, money was received for a 92-page transcript, which was sent to plaintiff on June 1, 2011, and another copy of the transcript was re-sent on July 6, 2011 with "legal mail" written on the outside of the envelope, pursuant to plaintiff's request when he did not receive the first copy.   (Doc. 1 at 47).

The Court notes that plaintiff filed a copy of the circuit court transcript of his criminal trial in *Hines v. White,* CA 11-0648-WS-C on July 18, 2012, (doc. 26), and in this action, as an attachment to the original complaint filed on November 15, 2011.   (Doc. 1 at 56-163).

### b. Deprivation of Property Claim.

Plaintiff's allegations concerning the trial transcript's destruction can also be construed as a deprivation of property claim.[26] Therefore, out of an abundance of caution, the Court is addressing plaintiff's claim for the trial transcript's loss. *See Cacho v. Lamas,* No. 3:11-CV-674, 2012 WL 3042973, at *4 (M.D. Pa. July 25, 2012) (unpublished) (addressing a deprivation of property claim in a denial-of-access-to-courts case out of an abundance of caution).

A claim for the deprivation of property, however, is only actionable in a § 1983 action when the taking of property is without due process of law. *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981) ("Nothing in [the Fourteenth Amendment] protects against all deprivations of life, liberty, or property by the State.  [It] protects only against deprivations without due process of law."), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986).

In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the United States Supreme Court held that the deprivation of property by persons acting under color of state law does not constitute a deprivation without due process of law when a predeprivation hearing is impractical and an adequate postdeprivation remedy is available at the time of the deprivation.  *Id.* at 532-33, 104 S.Ct. at 3203-04.  The *Hudson* Court reasoned that impracticality occurs when the loss of property is the result of a "random, unauthorized act by a state employee," *id.* at 532, 104 S.Ct. at 3203 (quoting *Parratt*, 451 U.S. at 541, 101 S.Ct.

---

[26] During the sanctions hearing held on June 23, 2015, plaintiff informed the Court that this action contained two claims, a denial-of-access-to-courts claim and a classification claim, while indicating that he was only prepared to discuss the sanctions issue at the hearing.

at 1916 ), because it is impossible for the state to know beforehand of the deprivation, negligent or intentional, and to provide a predeprivation hearing prior to the loss. *Id.* at 533, 104 S.Ct. at 3203. Some postdeprivation remedies that have satisfied due process are administrative procedures, *Parratt*, 451 U.S. at 543-44, 101 S.Ct. at 1916-17, or ordinary state-tort litigation procedures, *Hudson*, 468 U.S. at 535-36, 104 S.Ct. at 3204.

Based on the plaintiff's allegations, the actual deprivation occurred in the prison's mailroom when the first transcript arrived. *See* Doc. 1 at 47 (Department of Archives and History letter indicating the first transcript was sent on June 1, 2011). An established procedure for handling mail was not involved, as it is not referenced. Thus, due to first transcript's arrival not being anticipated by mailroom personnel, the deprivation of the trial transcript was random and unauthorized for which a predeprivation hearing was impractical. Therefore, in order for plaintiff's deprivation of property claim to be addressed by this Court, plaintiff must establish at the time of the deprivation no adequate, postdeprivation procedure was available to him. *Cf. Tinney v. Shores,* 77 F.3d 378, 382 n.1 (11th Cir. 1996) (finding that the plaintiffs' claim failed because they argued the violation was complete at the time of the deprivation and neglected to address the availability of an adequate, postdeprivation remedy).

Plaintiff did not, and will not be able to, establish that an adequate postdeprivation remedy was unavailable to him at the time of the deprivation. That is, claims for the loss of property incurred at the hands of Alabama state agencies or their employees may be presented for compensation to the Alabama Board of Adjustment pursuant to Alabama Code §§ 41-9-60, *et seq.* And a state

employee may be personally liable to an inmate in an ordinary tort action. *Milton v. Espey*, 356 So.2d 1201, 1203 (Ala. 1978); ALA. CODE § 6-5-262 (1975).

It is not necessary that the postdeprivation remedy be available to plaintiff at the present time to determine whether the deprivation was with or without due process. *Parratt*, 451 U.S. at 543-44, 101 S.Ct. at 1917. It is only required that an adequate, postdeprivation remedy be available to plaintiff when the deprivation occurred. *Id.* Because an adequate, postdeprivation remedy was available at the time of plaintiff's loss, the deprivation of property claim does not violate due process. *See Smith v. Governor for Alabama*, 562 F. App'x 806, 817 (11th Cir. 2014) (unpublished) (finding the Alabama Board of Adjustment provides a meaningful postdeprivation remedy); *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) ("Because [plaintiff] has had access to an adequate postdeprivation remedy, [i.e., Georgia's wrongful conversion of personal property statute], no procedural due process violation occurred, whether or not [defendant] ever initiated forfeiture proceedings); *Dawson v. City of Montgomery*, No. 2:06-cv-1057-WKW, 2008 WL 659800, at *8 (M.D. Ala. Mar. 6, 2008) (unpublished) (finding Alabama's conversion statute, Alabama Code § 6-5-260 (1975), is an adequate postdeprivation remedy); *Powell v. Ellis*, No. 3:07cv160/MCR/EMT, 2007 WL 2669432, at *3 (N.D. Fla. Sept. 7, 2007) (unpublished) (finding the inmate was not denied due process when his legal papers were destroyed because Florida's statute provided a remedy for the deprivation). Accordingly, plaintiff's claim for a deprivation of property without due process of law is frivolous. *Neitzke*, 490 U.S. at 325, 109 S.Ct. at 1831-32.

## IV. Classification Claim.

### A. Classification Allegations.

Plaintiff added classification claims and new defendants when he filed his amended complaint.  (Doc. 19 at 21-23).  The defendants to the classification claims are Kim Thomas, Cynthia White, Stan Dean, Bridgett Tyner, Annette Coleman, Cynthia Brown, and Lauren Philyaw.  (*Id.* at 21).  Defendants Thomas and White are also defendants with respect to his denial-of-access-to-courts claims.  Plaintiff's chief claim with respect to his classification is that he was ineligible to participate in the work-release program because his ADOC records erroneously recorded that he had three convictions for escape.  (*Id.* at 21).  Whereas, plaintiff maintains that he only has one conviction for attempted escape in 1981.  (*Id.* at 22).  As a result of the three escape convictions, he was given a medium-custody classification, which was approved, and he was permanently barred from work-release participation.  (*Id.*).  However, during a prior incarceration, plaintiff was allowed to participate in the work-release program.  (*Id.* at 21).  Furthermore, he alleges that he did not receive a semi-annual progress review in 2010 and 2011 and was not given his annual progress review in 2012 before he filed this action.  (*Id.*).

When the Court ordered plaintiff to file an amended complaint that was a "short and plain statement," because his original complaint was not (doc. 16), it did not authorize plaintiff to amend claims of a different nature than the claims in the original complaint.  It is beyond reason that if the original complaint needs to be reduced and clarified that an unrelated claim can be added.  Nonetheless, that is what has been done.

### B.  Misjoinder Law.

Rule 20 of the Federal Rules of Civil Procedure provides that persons "may be joined in one action as defendants if:  (A) any right to relief is asserted

against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED.R.CIV.P. 20(a)(2). "Even where joinder is proper, the Court may sever defendants based on considerations of fundamental fairness[.]" *Hoever v. Tucker,* No. 5:11-cv-254-MP-GRJ, 2013 WL 257058, at *3 (N.D. Fla. Jan. 23, 2013) (unpublished). But where misjoinder has occurred, the court on its own motion "may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED.R.CIV.P. 21. The determination of whether to sever is left to the trial court's discretion. *Fisher v. Ciba Specialty Chems. Corp.,* 245 F.R.D. 539, 541 (S.D. Ala. 2007) (Steele, J.). Some of the factors entering into the court's consideration of whether to sever are: "whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the motion is granted or denied." *Id.*

In the present action, the classification claims are unrelated to plaintiff's denial-of-access-to-courts claims as they do not arise out of the same transaction or occurrence and should have been brought in a separate action. *See George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a] 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of

the required fees. 28 U.S.C. § 1915(g).").[27]  Moreover, plaintiff's classification claims do not have a common question of law or fact with the denial-of-access-to-courts claims.  Thus, severing the unrelated classification claims serves judicial economy.  *See Bailey v. Board of Cnty. Comm'rs of Alachua Cnty., Fla.,* 956 F.2d 1112, 1127-28 (11th Cir.) (indicating that the district court should have severed "the employment-related due process issues from the earlier false arrest, false imprisonment and conspiracy issues."), *cert. denied,* 506 U.S. 832 (1992).

Previously, the severance of the classification claims would have not prejudiced the defendants connected to those claims and would not have prejudiced plaintiff, but now the two-year statute of limitations has expired.  *See Lufkin v. McCallum,* 956 F.2d 1104, 1105, 1108 n.2 (11th Cir.) (in Alabama the statute of limitation for a § 1983 action is two years), *cert. denied,* 506 U.S. 917 (1992).  Therefore, the Court will address the classification claims because not to do so would prejudice the plaintiff.

**C.  Analysis of Classification Claims.**

**1.  Classification Reviews.**

An examination of the substance of these claims shows that they lack legal merit.  *See Bilal,* 251 F.3d at 1349 (11th Cir.) (describing a frivolous claim as also being one with "little or no chance of success"); *Mathis v. Smith,* 181 F. App'x 808, 809 (11th Cir. 2006) (unpublished) (same); *Thomas v. Pentagon Fed. Credit Union,* 393 F. App'x 635, 637 (11th Cir. 2010) (unpublished) (same).  That is, several of

---

[27] The *George* court noted that besides from dodging another filing fee, the plaintiff hoped that one of his claims would be found to be non-frivolous "so he would receive no 'strikes' at all, as opposed to the 49 that would result from making 49 frivolous claims in a batch of 50 suits."  *George,* 507 F.3d at 607.

the claims advanced in plaintiff's classification allegations do not rise to the level of a constitutional violation as discussed below.

Plaintiff claims that in 2010 and 2011, he was not given semi-annual progress reviews, and in 2012, before he filed this action, he had not been given an annual review. (Doc. 19 at 22-23). However, he was given an annual review in March, 2011. (*Id.* at 22). He claims that he was due to receive these reviews pursuant to "law" and that his due process rights were violated when he did not receive them. (*Id.* at 23).

Due process attaches when a person has been deprived of a liberty or property interest accorded him by state or federal law. U.S. CONST. amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property without due process of law[.]"). A liberty interest in the prison context is found when an "'atypical and significant hardship [is imposed] on the inmate in relation to the ordinary incidents of prison life.'" *Johnson v. Boyd,* No. 2:09-CV-1117-ID, 2011 WL 3439315, at *10 (M.D. Ala. May 26, 2011) (unpublished) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed. 418 (1995), which held that future liberty interests in prison "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

In Alabama, "[p]rison inmates do not have a liberty interest in discretionary programs such as prison classifications." *Smith v. Governor of Alabama,* 562 F. App'x at 817 (relying on *Moody v. Daggett,* 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976), as "rejecting the notion that every state

action with adverse consequences for prison inmates, such as a prison classification, qualification for institutional programs, or eligibility for rehabilitative programs, violates a due process right"). "An inmate in the Alabama prison system has no constitutionally protected interest in the *procedure* affecting his classification because the resulting restraint, without more, does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Johnson,* 2011 WL 3439315, at *10 (emphasis added); *cf. Moody,* 429 U.S. at 99 n.9, 97 S.Ct. at n.9 (ruling that a federal inmate had no entitlement to a certain classification so as to invoke due process); *Smith,* 562 F. App'x at 817 (in order to prevail on a classification claim, inmate must show "the classifications created a severe change in prison conditions or imposed a hardship that was atypical of ordinary prison life"). Thus, a claim for failure to conduct a classification review does not implicate the Constitution and is therefore frivolous. *Hicks v. Alabama Dep't of Corr.,* CA No. 2:07cv141-WHA, 2007 WL 778439, at *2 (M.D. Ala. Mar. 12, 2007); *see Smith v. Georgia,* 684 F.2d 729, 732 n.6 (11th Cir. 1982) ("[N]ot every violation by a state agency of its own rules rises to the level of a due process infringement."); *Harris v. Birmingham Bd. of Edu.,* 817 F.2d 1525, 1527 (11th Cir. 1987)("[E]ven if the state statute has been violated, that does not prove a violation of a federal constitutional right."). Inasmuch as the state's violation of its own regulations does not rise to the level of a constitutional due-process infringement, and no facts giving rise to a state-created liberty interest were alleged, the Court finds that plaintiff's classification-review claims have little or no chance of success and are, therefore, frivolous. *Bilal,* 251 F.3d at 1349.

## 2. Denial of Work-Release Participation.

Plaintiff further claims that he was denied participation in the work-release program because his record reflects that he has three convictions for escape.  Whereas, he maintains that he has only one conviction for attempted escape in 1981.  (*Id.* at 21).  Plaintiff was first informed he was not eligible for work release when he arrived at Kilby Correctional Center in January 2010 due to "three prior escapes."  (*Id.)*.  Subsequently, defendant Philyaw recommended medium custody and told him she would note his request for community custody and placement at a work-release center.  (*Id.* at 22).  Her medium-custody recommendation was approved.  (*Id.* at 23).  Plaintiff wrote to defendant Thomas about his classification, requesting an investigation and complaining his Eighth Amendment rights were being violated at FCC on account of overcrowding.  (*Id.* at 23).  Plaintiff did not receive a response from defendant Thomas.  (*Id.*).

With respect to work release in Alabama, a liberty interest is not implicated by the failure to place an inmate in the work-release program because it does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see Smith v. Governor of Alabama,* 562 F. App'x at 817 (classifications used by Alabama prisons do not constitute liberty interests); *Patton v. Hetzel,* No. 2:11-CV-1070-TMH, 2012 WL 607696, at *3 (M.D. Ala. Jan. 25, 2012) (unpublished) (finding that the prisoner's claim that he was entitled to placement on work release was without merit as failure to place an inmate in this program does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  The denial of participation in work release is

an ordinary experience for inmates from which no constitutionally protected interest arises.  *Id.* (citing *Kitchen v. Upshaw,* 286 F.3d 179, 188 (4th Cir. 2002)).

Furthermore, in a pre-*Sandin* case, the Eleventh Circuit held an Alabama inmate has no liberty interest created by the state's laws or regulations for consideration for the work-release program.  *Francis v. Fox,* 838 F.2d 1147, 1149-50 (11th Cir. 1988).  In another pre-*Sandin* case, the Eleventh Circuit held that an Alabama inmate did not have a liberty interest inherent in the Constitution that was impacted by his removal from work release.  *Whitehorn v. Harrelson,* 758 F.2d 1416, 1420-21 (11th Cir. 1985) (observing that "[t]he [Supreme] Court's recent decisions emphasize that '[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the [C]onstitution, the Due Process Clause does not in and of itself subject an inmate's treatment by prison authorities to judicial oversight'") (citations omitted).  Accordingly, plaintiff's work-release claims are frivolous.  *Patton,* 2012 WL 607696, at *3 (finding the failure to place an inmate in the work-release program to be without legal merit).

### 3.  Erroneous Information in Prison Records.

A separate claim from the denial of work-release claim is based on the information that was relied upon to deny plaintiff's placement in the work-release program.  Plaintiff's information claim only identifies one conviction for attempted escape in 1981 from a city jail, but the other convictions are not specifically identified. The Court does not know whether these other references in plaintiff's record are to criminal convictions for escape or attempted escape or disciplinary convictions for escape, nor does it know anything else about each. Generally, when there is not a liberty interest in a program or privilege, the

procedures used to determine whether to grant or deny participation "are not required to comport with the standards of fundamental fairness." *O'Kelley v. Snow,* 53 F.3d 319, 321 (11th Cir. 1995) (because the plaintiff had no liberty interest in parole, he "had no constitutional right to procedural due process protections, and, therefore, he had no right to an explanation for departure from the parole guidelines" from the board).

Only in the rare instance, when there has been a "flagrant or unauthorized action" by the decision-maker, has a claim been found when no liberty interest is present. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440, 1442 (11th Cir. 1991) (finding the Alabama parole board acted arbitrarily and capriciously, in violation of due process, when it knowingly relied on false information in the inmate's file to deny him parole and minimum custody and to label him a sex offender even though the inmate did not have a liberty interest in parole). *Contra Johnson v. Rodriguez,* 110 F.3d 299, 308 n.13 (5th Cir.) ("[T]he procedural Due Process protections created in *Monro*e and *Paine* are in essence inconsistent with subsequent precedent in their respective circuits and that both cases have thus been effectively overruled. Whatever the viability of these anomalous cases today, our precedent is definite and precise on this point: in the absence of a cognizable liberty interest, a state prisoner cannot challenge parole procedures under the Due Process Clause.") (citing *O'Kelly, supra,* 53 F.3d at 321-22), *cert. denied,* 522 U.S. 995 (1997).

Plaintiff's allegations can be distinguished from *Monroe.* This is not a parole case.[28] Plaintiff only sought placement in the work-release program and

---

[28] A review of the Eleventh Circuit Court of Appeals' decisions since *Monroe* reflects that its use of the *Monroe* decision has been limited to cases where inmates challenge parole

would not have been released completely from incarceration.  Moreover, plaintiff does not face the prospect of being labeled a sex offender based on admittedly false information and of having the prospect of sex-offender labeling follow him after his release from incarceration, as the plaintiff in *Monroe* did.  More importantly, defendants have not admitted to using false information in this case; whereas, in *Monroe* the defendants did.  And *Monroe* was decided before *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), in which the Supreme Court established how a future liberty interest is to be determined, and affirmed that in the absence of a liberty interest, the due process clause's protections do not attach.  *Id.* at 484, 487, 115 S.Ct. at 2300, 2302.  Thus, the Court concludes that plaintiff's erroneous information claim has little or no chance of success and is, therefore, frivolous.  *Bilal*, 251 F.3d at 1349.

### 4. Substantive Due Process Claim.

Plaintiff conclusorily asserts that his substantive due process rights were violated when he failed to receive classification reviews and was classified to medium custody due to erroneous information, instead of minimum and community custody, which would have made him eligible for the work-release program.  (Doc. 19 at 21, 31-34).  To succeed on a substantive due process claim, a plaintiff must allege that he was deprived of "one of those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Doe v. Moore,* 410 F.3d 1337, 1343

---

decisions except in the case of *Owusu-Ansah v. Coca-Cola Co.,* 715 F.3d 1306 (11th Cir.), *cert. denied,* 134 S.Ct. 655 (2013).  But, in *Owusu-Ansah,* an American with Disabilities Act case, *Monroe* was cited for the proposition that the Eleventh Circuit "review[s] de novo the magistrate judge's conclusions of law if they were accepted and adopted by the district court."  *Id.* at 1308.

(11th Cir. 2005) (quotation and internal quotation marks omitted); *see McKinney v. Pate,* 20 F.3d 1550, 1556-58 (11th Cir.) ("The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty'. . . . [M]ost—but not all—of the rights enumerated in the Bill of Rights are fundamental[.]"), *cert. denied, McKinney v. Osceola Cnty. Bd. of Cnty. Comm'rs,* 513 U.S. 1110 (1995); *cf. Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (Substantive due process protection is only recognized in "matters relating to marriage, family, procreation, and the right to bodily integrity.").

"The scope of substantive due process is quite narrow, and federal appellate courts have cautioned against the open-ended judicial expansion of other unenumerated rights in substantive due process jurisprudence." *Petersen v. Florida Bar,* 720 F. Supp.2d 1351, 1363 (M.D. Fla. 2010) (Steele, C.J.) (citation and quotation marks omitted).  Moreover, the Eleventh Circuit has not expanded "substantive due process protections to embrace state-created property rights, reasoning that such property rights are not fundamental because they were not created by the Constitution." *Id.* at 1364.  "[A]reas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause[.]"  *McKinney,* 20 F.3d 1550, 1556 (quotation and internal quotation marks omitted).  More to the point, "it is an absolute prerequisite for a substantive due process claim that the plaintiff show deprivation of a protectable interest in life, liberty or property." *Petersen,* 720 F.Supp.2d at 1365.

With respect to plaintiff's claims that he did not receive classification reviews at a certain time and did not receive his desired classification, plaintiff

does not have an interest based on the Constitution that is being impacted, and it can assuredly be said that these rights advanced by plaintiff are not firmly rooted in the history and tradition of the United States. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. . . . [T]he conviction, with all its procedural safeguards, has extinguished that liberty right[.]"); *see also Moody,* 429 U.S. at 88 n.14, 97 S.Ct. at 279 n.14 (rejecting "the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right," including decisions affecting "classification and eligibility for rehabilitative programs"); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976) ("Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system."). And as discussed above, plaintiff does not have a liberty interest created by the Constitution in receiving classification reviews, a certain custody classification, and work-release status.

Moreover, plaintiff's allegations of arbitrary and capricious conduct do not make his allegations a substantive due process claim. *See Petersen,* 720 F. Supp.2d at 1364-65.   A substantive due process claim still requires the deprivation of a fundamental interest that arises under the Constitution. *Id.* at 1365.  Where there is an arbitrary deprivation of a state-created liberty interest, which is claimed to be a substantive due process deprivation, the Eleventh Circuit has treated it as being the "equivalent to claiming that no fair, unbiased, and meaningful procedures were used for the deprivation. . . . [which is] a

procedural due process claim." *Id.* at 1365 n.14. Accordingly, the Court finds that plaintiff's claims for a violation of his substantive due process rights are frivolous. *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831-32.

### 5. Overcrowding Claim.

In concluding his classification claims, plaintiff briefly alleges that "because the defendants ha[ve] illegally barred [him] from all participation in state programs and conceal[ed] the fact that [his] due process rights are being violated[,] his incarceration at [FCC] violate[s] [his] 8th Amendment rights which prohibit[s] cruel and unusual punishment [because he] is housed at a facility that's designed to house between 700 and 800 prisoner[s] with a population at present of 1268 subjecting plaintiff to intense overcrowding that clearly has been prohibited by the court entitling plaintiff to judg[]ment against these defendants." (Doc. 19 at 23).

Plaintiff presents his overcrowding allegations as the injury to his classification claims. Viewing the overcrowding allegations in this manner makes sense because plaintiff does not develop a claim for overcrowding. That is, there is almost a total absence of facts demonstrating overcrowded conditions.[29] The only information relevant to an overcrowding claim in his

---

[29] An independent claim for overcrowding would need to overcome the hurdle posed by Rule 20(a)(2) requiring that "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED.R.CIV.P. 20(a)(2)(A),(B). A claim that does not satisfy Rule 20(a)(2) is subject to being severed, i.e., dismissed, pursuant to Rule 21 of the Federal Rules of Civil Procedure for misjoinder. FED.R.CIV.P. 21 ("The court may also sever any claim against a party.")

In the present action, an independent overcrowding claim does not arise from the same occurrence as the other claims, i.e., his denial-of-access-to-courts claim based on his criminal sentence and his classification claim based on the denial of a certain custody

classification claims is the number of inmates housed at FCC and the number of inmates FCC was designed to house. The Court notes that from a review of plaintiff's other claims, the only other information remotely pertinent to an overcrowding claim is his allegation referring to the need to increase the access to the law library and legal materials. From this, an inference can be made that overcrowding could be one of the many causes creating this alleged need.

"While prison overcrowding is not in itself cruel and unusual punishment, it is a relevant factor if it causes other deprivations and disadvantages to be placed in the prison population." *Holley v. Robinson,* 911 F.2d 722, *1 (4th Cir. 1990) (table). "[T]here is nothing necessarily unconstitutional with overcrowding itself; inconvenience does not violate the Eighth Amendment." *Laube v. Haely,* 234 F. Supp.2d 1227, 1245 (M.D. Ala. 2002).

Thus, to establish an Eighth Amendment "cruel and unusual punishment" claim, a plaintiff must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter,* 501 U.S. 294, 303 (1991), and (3) causation, *Williams v. Bennett,* 689 F.2d 1370, 1389–90 (11th Cir.1982)." *LaMarca v. Turner,* 995 F.2d 1526, 1535 (11th Cir.), *cert. denied,* 510 U.S. 1164 (1994). In the overcrowding context, there must be an

> unquestioned and serious deprivation of basic human needs. Conditions other than those in *Gamble* and *Hutto*, alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and

---

and placement at work release, and the questions of law and fact are different for an overcrowding claim than his present claims. Moreover, there is no information in the amended complaint that would indicate plaintiff would suffer a prejudice if an independent overcrowding claim proceeded in a separate action, (as presumably the FCC inmate population has not dramatically decreased and plaintiff's release from incarceration has been relatively recent).

> unusual under the contemporary standard of decency that we recognized in *Gamble, supra,* at 103–104, 97 S.Ct., at 290–291. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see*

*Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991)

("*Some* conditions of confinement may establish an Eighth Amendment violation

'in combination' when each would not do so alone, but only when they have a

mutually enforcing effect that produces the deprivation of a single, identifiable

human need such as food, warmth, or exercise. . . . Nothing so amorphous as

'overall conditions' can rise to the level of cruel and unusual punishment when

no specific deprivation of a single human need exists.").

   While it is a prison official's duty to furnish prisoners with "reasonably

adequate food, clothing, shelter, sanitation, necessary medical attention, and

personal safety[,]" *Newman v. Alabama,* 559 F.2d 283, 288 (5th Cir. 1977), *rev'd in*

*part on other grounds,* 438 U.S. 781 (1978), comfortable prisons are not mandated

by the Constitution.   *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400.   Accordingly,

extreme deprivations are required to make out a conditions-of-confinement claim

under the Eighth Amendment.   *Chandler v. Crosby,* 379 F.3d 1278, 1289 (11th Cir.

2004) (citing *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 999, 117 L.Ed.2d 156

(1992)).

   In the amended complaint, no condition was alleged to exist that affected

plaintiff's health or safety.   That is, the Court cannot extrapolate from the

allegations that a condition, such as "food, warmth, or exercise," existed that

caused a deprivation of a single, basic human need, nor will it.   *GJR Investments,*

132 F.3d at 1369 (courts do not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action").  The deprivations in this action concern the denial-of-access-to-courts claim and the denial of a certain classification that would allow plaintiff to participate in work release.  These claims do not involve the deprivation of a single, basic human need.  Moreover, considering all of plaintiff's allegations, they are not consistent with a deprivation of single, basic human need, much less a deprivation that is extreme.  Thus, a claim for overcrowding has little or no chance for success and, therefore, is frivolous.  *Bilal,* 251 F.3d at 1349.

### 6.  Claims Under 42 U.S.C. §§ 1985 and 1986.

Plaintiff alleges that §§ 1985 and 1986 were violated with respect to his classification claims.  (Doc. 19 at 21).  Because plaintiff again did not identify under which subsection of § 1985 he is proceeding, as discussed above, subsection 3 is the only possible subsection under which he may have a claim.  However, to bring a successful claim under § 1985(3), a plaintiff must prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Park,* 120 F.3d at 1161.

With respect to plaintiff's classification claims, his allegations do not satisfy *Iqbal and Twombly* pleading standards, as a plausible claim cannot be discerned from the classification allegations that would satisfy the requirements

for pleading a claim under § 1985(3).  Absent from his classification allegations is any reference to a conspiracy or allegations that could be construed as a conspiracy.  (*Id.* at 21-23, 25, 27-28, 32-34).  As discussed previously, a conspiracy must be alleged in order to state a claim under § 1985.  *L.S.T.*, 49 F.3d at 682 n.4.

And the second element requires the plaintiff to "show that the deprivation of rights or privileges occurred as a result of some racial, or ... otherwise class-based, invidiously discriminatory animus behind the conspirators' actions."  *Kivisto v. Miller, Canfield, Paddock and Stone, PLC,* 413 F. App'x 136, 140 (11th Cir.) (quotation omitted), *cert. denied,* 132 S.Ct. 577 (2011).  That is, "[s]ection 1985(3) provides a remedy for a conspiracy to interfere with civil rights."  *Id.* at 139.  However, plaintiff's allegations do not reflect that the defendants were "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory intent."  *Burrell v. Board of Tr. of Ga. Military Coll.,* 970 F.2d 785, 794 (11th Cir.), *cert. denied,* 507 U.S. 1018 (1993).

Furthermore, the fourth element of a § 1985(3) claims states that "a person [must be] either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  42 U.S.C. § 1985(3).  This subsection requires proof of a violation of a serious constitutional right.  *Cook,* 573 F.3d at 1157.  The list of these rights is short.  *Trawinski,* 313 F.3d at 1299.  Moreover, "an attempted deprivation of constitutional or statutory rights is not the same as an actual deprivation."  *Cook,* 573 F.3d at 1157 (citing *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir. 1984)).  In the instant action, no deprivation of a constitutional or statutory right has occurred so as to satisfy the fourth element of a § 1985(3) claim.  Accordingly, the Court finds that plaintiff's claim under § 1985 is

frivolous.  *See Reddy,* 588 F. App'x at 904-05 (affirming the *sua sponte* dismissal of a § 1985(3) claim as frivolous).

Inasmuch as plaintiff's § 1985(3) claim connected to his classification allegations is being recommended for dismissal as frivolous, plaintiff's § 1986 claim based on his classification allegations is recommended for dismissal as frivolous.  The failure to state a claim under § 1985 precludes plaintiff from stating a claim under § 1986.  *Park,* 120 F.3d at 1160  ("The text of § 1986 requires the existence of a § 1985 conspiracy.");  *Morast,* 807 F.2d at 930  ("Because a § 1986 action is predicated on a successful conspiracy action under § 1985, [plaintiff] has no cause of action under § 1986.").  Thus, plaintiff's § 1986 claim is due to be dismissed as frivolous.  *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831-32.

## IV.  Conclusion.

Based upon the foregoing reasons, it is the undersigned's recommendation that this action be dismissed, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous.[30]

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

---

[30] The Court concludes that a discussion of the application of 42 U.S.C. § 1997e(e) is not necessary.  It is noted, however, because plaintiff did not have a serious physical injury, some of his damages claims would be subject to dismissal pursuant to § 1997e(e).  *See* 42 U.S.C. § 1997e(e) ("Limitation on recovery - No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]").  Section 1997e(e) excludes recovery of punitive and compensatory damages for mental or emotional injuries unaccompanied by a prior physical injury that is greater than *de minimis*.  *Al-Amin v. Smith,* 637 F.3d 1192, 1196-97 (11th Cir.) (other courts have noted that the remaining remedies are ample and that the Constitution does not demand an individually effective remedy for every constitutional violation) (citations and quotation marks omitted); *see Brooks v. Warden,* No. 13-14437, 2015 WL 5157330, at *10 (11th Cir. 2015) (holding in a published opinion that nominal damages are available for a violation of constitutional right without a showing of physical injury).

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this 1st day of February, 2016.

s/ WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

THOMAS CURTIS HINES,                    :
AIS 118977,
                                        :
        Petitioner,
                                        :
vs.                                          CA 11-0648-WS-C
                                        :
CYNTHIA WHITE,
                                        :
        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This cause is back before the undersigned for issuance of a supplemental report

and recommendation on petitioner's application for a certificate of appealability (Doc.

23), which Chief United States District Judge William H. Steele has construed as a

motion to reconsider, as contemplated by Rule 11(a) (*see* Doc. 28, at 1 & 4). This report

and recommendation is limited to determining "whether reasonable jurists would find

it debatable whether the petitioner's ***first ground*** states a valid claim of the denial of a

constitutional right." (Doc. 28, at 4 (emphasis supplied).)[1] In structuring the

supplemental report and recommendation, the undersigned is ever mindful of the

framework set forth in the Court's order dated August 21, 2012 (*see id.* at 3-4), more

specifically:

> On the present record, the Court must conclude that reasonable
> jurists would find it debatable whether the petitioner's first ground for

---

[1]        As made clear by Judge Steele: "As to all other grounds, the Court concludes
that reasonable jurists could not find it debatable that they were properly subject to summary
dismissal as claims in a second or successive petition as to which appellate pre-authorization
was required and not obtained. No COA will issue as to those claims, and as to them the motion
to reconsider is **denied**." (Doc. 28, at 4 n.2 (emphasis in original).)

relief constitutes, or should be construed as, a request for relief under Rule 60(d), immune from the procedural requirement of appellate pre-authorization and not subject to summary dismissal as a second or successive petition.

To obtain a COA, however, the petitioner must also show that reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right. The parties and the Magistrate Judge have not addressed the requirements for fraud on the court and whether they have been, or reasonably could be construed as having been, met in this case. Nor have they addressed whether, assuming any such fraud in the federal court occurred, there was (or could reasonably be considered to have been) an underlying constitutional violation in connection with the use of the petitioner's prior conviction[s] to sentence him as a habitual offender.

(*Id.*) In order for the undersigned to properly consider Hines' motion to reconsider the

denial of a COA, as it relates to petitioner's first ground (*see* Doc. 23, at 5-13),[2] it is

---

[2]     Hines' motion for reconsideration, as it relates to the first ground, reads, in relevant part, as follows:

Petitioner['s] underlying habeas corpus claim was "violation of his 6th Amendment right to effective assistance of counsel when trial counsel errored (sic) in failing to object to the State['s] lack of notice of its intent to treat Petitioner as a habitual offender. Respondent['s] position was [] because Petitioner admitted prior conviction[s] during trial for impeachment purposes, the admission waived the State[']s notice requirement and burden of proof under Rule 26.6(B)(3) I.II.III. Ala.R.Crim.P.

In the underlying habeas corpus proceeding Petitioner['s] position was his admission was not a [] judicial admission given for the sole purpose of waiving the State['s] notice requirement or burden of proof, and in support of his position, Petitioner cited case law extensively from C.J.S. criminal law section dealing with admission of prior convictions for impeachment purposes.

The District Court adopted the Respondent['s] position to deny habeas corpus relief ruling that, [] under Alabama law, a Defendant[']s admission of prior convictions during trial waive[s] the State['s] notice requirement and burden of proof under Rule 26 . . . [and,] therefore, defense counsel was not ineffective in failing to object to the State['s] lack of notice (see Mag.[] Recom. p.3) [T]hus[,] Petitioner['s] underlying habeas corpus stated a valid claim of a violation of a constitutional right, but in this case was erroneously rejected by the District Court because of a fraud on this Court caused by the Respondent causing the District Court to commit "plain error" in its ruling, which fraud is the subject of Petitioner['s] Rule 60(B) claim in his habeas corpus.

.  .  .

In his Rule 60(B) claim, Petitioner moved the District Court to set aside its prior habeas corpus judgment because of the Respondent['s] deliberate concealment from Petitioner and the Court, the [Alabama] Court of Criminal Appeals decision in <u>Webb v. State</u>, 539 So.2d 352 (Ala.[Crim.App.] 1987).

.  .  .

In his Rule 60(B) claim, Petitioner pointed out how in 1986 after the Alabama Court of Criminal Appeals rejected his judicial admission claim, the identical claim as raised by Petitioner in federal court, based on the identical factual predicate as the District Court was considering in Petitioner['s] habeas corpus, was again raised in the Alabama Court of Criminal Appeals.

.  .  .

Petitioner also pointed out in his Rule 60(B) claim how, prior to the District Court ruling on Petitioner['s] judicial admission claim in his pending habeas corpus, on April 17, 1987 the Respondent received a[n] advance[d] copy of the Court of Criminal Appeals opinion in <u>Webb</u>[, and] how in <u>Webb</u> the Court of Criminal Appeals ruled [] [i]n the absence of prior notice, a Defendant['s] admission of prior convictions during trial for impeachment purposes <u>does not</u> waive the State['s] notice requirement or burden of proof, that the <u>admission was not a judicial admission</u> given for the sole purpose of waiving the State['s] notice requirement or burden of proof under Rule 26, reversing Webb['s] sentence under the Habitual Offender Act and ordering resentencing without application of its provisions.

Petitioner pointed out in his 60(B) claim how the Respondents, fully aware of the <u>Webb</u> decision in April 1987, never informed Petitioner or the District [Court] that the Alabama Court of Criminal Appeals in <u>Webb</u> had adopted verbatim Petitioner['s] legal argument that was before the District Court, instead, the Respondent concealed the <u>Webb</u> decision from both Petitioner and the District Court, allowing the District Court to commit "plain error" in denying habeas corpus relief in its ruling that [] under Alabama law, a Defendant['s] admission of prior conviction[s] during trial waive[s] the State['s] notice requirement and burden of proof[,] when the law at the time of the district court['s] denial of habeas relief was such admission <u>does not</u> waive the State['s] notice requirement or burden of proof.

.  .  .

Jurist[s] of reason analyzing the factual predicate of Petitioner['s] Rule 60(B) claim, would have found that . . . Petitioner['s] Rule 60(B) claim does not challenge the validity of his state court conviction, only the integrity of the District Court['s] prior judgment and the method by which the prior judgment was obtained by the Respondent[s], by their fraud on the Court in concealing the <u>Webb</u> decision, giving them a legal advantage they wasn't entitled to under Webb, which affected the integrity of the District Court decision causing it to

3

necessary for the undersigned to provide a proper historical context to this ground and, to this end, the undersigned ordered from the Federal Records Centers of the National Archives and Records Administration the complete file of petitioner's initial habeas corpus attack on his conviction and sentence filed on April 10, 1986, *Hines v. Johnson*, 86-0357-BH-S.[3] Therefore, while some of the facts utilized herein will be the same as those contained in the previous report and recommendation entered in this case on May 24, 2012 (Doc. 15), the undersigned will also liberally intersperse facts gleaned from *Hines v. Johnson, supra*.

## BACKGROUND

On December 5, 1983, Hines was convicted of possession of burglar's tools in the Circuit Court of Mobile County, Alabama and was sentenced to a 30-year term of imprisonment pursuant to Alabama's Habitual Felony Offender Act, Ala.Code § 13A-5-9(b)(1). (*Compare* Doc. 5, at 2 *with* Doc. 12, Exhibit 5, at 1.)[4] During petitioner's trial, and

---

        commit "plain error" in denying habeas relief, the District Court would not have knowingly committed if it was made aware of the decision in <u>Webb</u> on the identical issue it was deciding.

(*Id.* at 5-6, 7, 8, 8-9 & 10.)

    [3]     This file reflects that the initial magistrate judge assigned to the case was Patrick H. Sims, *see Hines v. Johnson,* 86-0357-BH-S, at Docs. 1 & 4; however, by the time the report and recommendation was entered, Magistrate Judge Milling was the assigned magistrate judge, *see Hines v. Johnson,* 86-0357-BH-M, Doc. 33. Because two magistrate judges were involved with the proceedings in this case, hereinafter the undersigned will simply refer to the case number 86-0357-BH.

    [4]     Section 13A-5-9(b)(1) of Alabama's Criminal Code provides that "[i]n all cases when it is shown that a criminal defendant has been previously convicted of any two felonies and after such convictions has committed another felony, he or she must be punished as follows: (1) On conviction of a Class C felony, he or she must be punished for a Class A felony[.]" *Id*. Possession of burglar's tools is a Class C felony, *see* Ala.Code § 13A-7-8(b); therefore, where an individual has been previously convicted of any two felonies and thereafter commits a Class C felony, he must be punished for a Class A felony, *see* Ala. Code § 13A-5-9(b)(1), as follows: "For a Class A felony, for life or not more than 99 years or less than 10 years." Ala.Code § 13A-5-6(a)(1).

as it specifically relates to Hines' first ground, Hines mentioned during his direct examination that he told the man who employed him to perform masonry work, Clay Bryant, that he was "recently out of the penitentiary," *see Hines v. Johnson*, CA 86-0357-BH, Doc. 10, Exhibit A Number 1 to Answer, Trial Transcript, at 49; on cross-examination admitted that he was convicted, by guilty pleas, of burglary in the second degree in Mobile County on July 19, 1977 and receiving stolen in the first degree in Mobile County on July 29, 1981, *id.* at 62-63; and reiterated on re-direct examination that he pled guilty to those "prior convictions[.]" *Id.* at 67 ("Q Thomas, on the prior convictions that they have on you, did you plead guilty to all those? A Yes, sir.").) Hines' conviction and sentence were affirmed by the Alabama Court of Criminal Appeals in an unpublished memorandum opinion issued on April 10, 1984. *Hines v. State*, 453 So.2d 7 (Ala.Crim.App. 1984) (table). That court ultimately issued a certificate of final judgment of affirmance on May 1, 1984. (*See* Doc. 12, Exhibit 1, at 2.).

Hines filed a petition for writ of error coram nobis in the Circuit Court of Mobile County on May 7, 1984. (*See id.,* at 3.) Therein, petitioner alleged that he was denied the effective assistance of counsel and, as well, that he was denied his constitutional right to a speedy trial. *Hines v. State*, 461 So.2d 50 (Ala.Crim.App. 1984). The trial court dismissed Hines' writ without an evidentiary hearing. *Id.* The Alabama Court of Criminal Appeals found no error with the trial court's summary dismissal of petitioner's speedy trial claim but found his allegations of ineffective assistance of trial and appellate counsel sufficient to warrant an evidentiary hearing; therefore, the cause was remanded to the trial court for such a hearing. *Id.*[5]

---

[5]     As noted in the dissent, one of petitioner's claims of ineffective assistance of trial counsel was that his attorney "did not object to the use of the prior felony convictions at the

5

During the error coram nobis hearing, on February 14, 1985, Hines' arguments regarding his trial counsel's ineffective assistance at sentencing consisted of the following:

> Counsel was again ineffective when he failed to object to the sentence imposed by the Court. At the close of the evidence when the jury returned its verdict of guilty His Honor asked me did I have anything to say before sentencing. I again brought to His Honor['s] attention the fact that I had been . . . denied my right to a speedy trial. Me and His Honor made one or two statements then His Honor said that I'm not going to argue with you, I sentence you to thirty years in the State Penitentiary.

> To begin with, the indictment didn't allege that I was a Habitual Offender. . . .

> THE COURT:     But you are, aren't you? I mean, don't you have three previous felony convictions before this one, four?

> MR. HINES: Your Honor, that's not the issue. The issue is not whether I am a Habitual Offender. It was whether at the time I stated that I had prior felony conviction[s], could those prior felony convictions be used to enhance my punishment by giving me, first, notice that I be treated as a Habitual Offender[,] and then second, without giving me a right to be heard on that particular issue.

> THE COURT:     I thought the Statute makes it mandatory.

> MR. HINES: Notice still is required, Your Honor . . . and then I have a right to be heard. Right here, Alabama Rules of Criminal Procedure, temporary rules, Rule 6-3-2: "At a reasonable time prior to the hearing the defendant shall be given notice of the prior convictions or conviction upon which the State intend to proceed." . . . It was never alleged that I was a Habitual Offender. And at the time I admitted having prior felony conviction[s] . . . that statement could only be used for impeachment purposes.

> .     .     .

> At the time I admitted having prior felony conviction[s], those priors could only be used for impeachment purposes. The indictment didn't allege that I was a Habitual Offender. After the jury found me guilty, [neither] the prosecution, the Court or my attorney moved that I be

sentencing hearing[.]" *Id*. at 51.

[treated] as a Habitual Offender even though the State of Alabama, particularly Mobile County, has a policy of giving a written or oral notice of the State['s] intent to proceed against the defendant as a Habitual Offender. What I have here is a motion filed in Mobile County[] . . . for Habitual Offender Status . . . [in] [t]he case [of] . . . State of Alabama versus James Edward Broaden . . . .

.         .         .

The Appellate Court [has] stated: "There is no requirement that defendant be notified prior to conviction of [the] State['s] intent to proceed against the defendant as a Habitual Offender. What is required is reasonable notice prior to sentencing." No notice was given me. The records don't show, no where in this transcript does it show that oral notice or written notice was given that I should be treated as a Habitual Offender. And at the time that I was found guilty by the jury, the maximum punishment I could receive for a Class C felony was from one to ten years. In order to enhance that punishment it had to be alleged by somebody that I was a Habitual Offender. I had to be given notice of the State['s] intent to proceed against me as a Habitual Offender. And I was supposed to [have] been given the opportunity to be heard.

*Hines v. Johnson*, CA 86-0357-BH, Doc. 10, Exhibit B Number 3, Error Coram Nobis

Hearing, at 31-33, 34 & 35-36. Hines' trial attorney, Glenn Davidson, Esquire, also

testified during the error coram nobis hearing. *See id.* at 45-52.

Q        Mr. Davidson, you say . . . in bringing to the jury's attention that I had prior criminal records is because you had anticipated that I would take the witness stand[,] is that correct?

A        Yes. And I think you know that too.

Q        Then why compound the prejudicial effect of that by again in your second comment bringing to the jury's attention that fact that I had participated in past criminal activity?

A        Well because it was my strategy and my thoughts that if the jury knew well enough in advance that you had . . . a prior conviction record that the prejudicial impact would be eased whereas if you took the stand and you were testifying that you never had done this, you didn't know, you know, you weren't out there to break into this man's car[,] and then on cross examination they come out and say well you've been convicted of burglary and receiving stolen property. It was my opinion that that would have been more prejudicial for the jury to hear that the first time on cross examination.

Q       Then . . . at all times during the trial, even if I took the witness stand, your strategy was to alleviate the prejudicial effect of the prosecution bringing out at trial the felony convictions; that was your strategy?

A       That's a fair statement of it.

Q       Then why when I took the stand you didn't bring out the fact again that I had a prior criminal record?

A       Well, I did, Thomas.

Q       No. If you look at the records on direct examination when I was on the witness stand, you did not bring up the fact that I had a prior criminal record. You never asked me about my prior criminal record when I was on the witness stand on direct examination.

A       Yes, you're right on that.

.       .       .

Q       Mr. Davidson, why then after the prosecution had brought the fact out that I had a criminal record and introduced the certified copies; why wouldn't you let this diminish from the jury's mind? Why would you turn around on recross (sic) examination and compound the prejudicial effect of the statement again by bringing it right back to the jury's attention again following the prosecution?

A       Okay. All right. I read the transcript last night and on redirect I got into the fact that you plead (sic) guilty to those priors. And I was trying to bring to the jury's attention that you had plead (sic) guilty to those prior charges whereas you were pleading not guilty to this. And I was going to ask you if you plead (sic) guilty to those prior ones because you were guilty, and there was an objection made because I was getting past the fact that you had been convicted and the objection was sustained.

*Id.* at 47-48 & 48-49. In addition to this testimony, petitioner's trial counsel unequivocally testified that both he and Hines had notice before trial of all prior felony convictions, whether such notice was affirmatively reflected in the record or not. *Id.* at 51. The trial court entered an order on February 22, 1985, denying Hines' error coram nobis petition and finding same to be without merit. *Hines v. Johnson,* 86-0357-BH, Doc.

8

10, Exhibit B Number 3, ORDER. On return from remand, the Alabama Court of

Criminal Appeals affirmed the trial court's denial of Hines' error coram nobis petition.

*Hines v. State*, 489 So.2d 9 (Ala.Crim.App. 1986).

> After a thorough review of the transcript of the evidentiary
> hearing, it is apparent to us that the appellant failed to prove that he was
> denied effective assistance of counsel under the guidelines set out in
> *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
> (1984). The order of the trial court dated February 22, 1985 which denied
> the relief requested in the appellant's petition is in all respects proper.
> Therefore, our judgment of December 11, 1984, which reversed the earlier
> order by the trial court, is due to be set aside and a judgment entered
> affirming the denial of the appellant's petition.

*Id.*

Hines filed a complaint seeking federal habeas corpus relief, pursuant to 28

U.S.C. § 2254, in this Court on April 10, 1986, collaterally attacking his conviction and

sentence. *Hines v. Johnson,* CA 86-0357-BH, Doc. 1. In this federal petition/complaint,

Hines, in conclusory fashion, listed some twelve (12) instances of alleged ineffective

assistance of trial counsel, including the following: "(9) COUNSEL WAS INEFFECTIVE

WHEN HE FAIL[ED] TO OBJECT TO THE SENTENCING PHASE OF PETITIONER['S]

TRIAL[,]" *id.* at 6, but he cited no supporting case law in his complaint, *see* Doc. 1, at 1-8.

Back in 1986, a prisoner attacking his conviction and sentence actually filed a pleading

denominated "HABEAS CORPUS COMPLAINT CHALLENGING STATE

CONVICTION," *see id.*, and, therefore, not surprisingly, the State of Alabama would

answer the complaint, *compare id.* at Doc. 5 *with* Doc. 10, ANSWER. The respondent's

answer to Hines' first federal petition was a generic four-page document which briefly

described the procedural history relating to petitioner's direct appeal and error coram

nobis proceedings, *see id.,* Doc. 10, at 1-2; noted the general grounds raised in the

petition (i.e., ineffective assistance of trial counsel, ineffective assistance of counsel on

9

appeal, and the denial of a true and correct copy of the trial transcript), *id.* at 2; and, finally, focused the Court's attention to the standard for judging an attorney's performance set forth some two years earlier by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), briefly arguing that Hines had failed to establish any errors by counsel "much less that counsel made errors so serious that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* at 3 (citation omitted). While the respondent did amend its answer on June 12, 1986 to address an order entered by Magistrate Judge Patrick Sims related to Hines' contentions that his trial attorney failed to object to alleged prejudicial comments made by the prosecution during closing arguments, *compare id.* at Doc. 17 *with* id. at Doc. 11, and ultimately expanded the record to provide the Court with a transcribed copy of those closing arguments, *compare* id. at Doc. 25 *with* Docs. 26 & 19, the respondent was not ordered by the Court to further expound upon the arguments contained in his answer, as amended, *see, e.g.,* id. at Docs. 26-38. And while petitioner was directed to identify from the closing arguments transcript those "arguments with respect to which counsel was allegedly ineffective by failing to object[,]" *see id.* at Doc. 26, Hines did not confine himself to the closing arguments but, instead, seized the opportunity to expound upon *all* claims raised in his habeas corpus complaint in his "DEMAND FOR JUDGMENT," filed September 29, 1986. *See id.* at Doc. 27. In this document, Hines too recognized the applicability of *Strickland v. Washington, supra, see id.,* MEMORANDUM BRIEF, at 1, and cited only to federal cases in discussing his contention that trial counsel provided ineffective assistance at his sentencing, *see id.* at 11.

[P]etitioner contends that counsel['s] eight[th] error (para-9-2254) involves counsel['] failure to object to the sentencing phase of petitioner['s] trial.

[A]fter a jury verdict of guilt, the trial court proceeded to sentence petitioner to 30 years in the state penitentiary for a conviction of a class c felony . . ., the based (sic) of the sentence was not stated by the court or shown from the records so petitioner will assume that the trial court sentence was based on either counsel['s] assertion of prior convictions, . . . or petitioner['s] admission of prior convictions . . . .

[P]etitioner submit[s] that if the trial court based his enhanced sentence on counsel['s] assertion of prior conviction[s], then counsel was required to object because the court failed to determine whether petitioner agreed with counsel['s] assertion. Cox v. Hutto, 598 F.2d 394[.] [F]urther[,] if the sentence was based on petitioner['s] admission of prior conviction[s,] then counsel was again required to object because petitioner was never informed of the consequences of his admission. Wright v. Craven, 461 F.2d 1109 (1972).

[P]etitioner submit[s] that he was not aware that counsel would assert he had prior conviction[s] before the jury, and even though counsel stated that he knew [I] would take the stand as the reason for asserting those prior conviction[s], . . . this fact does not relieve the trial court of its duty to determine if petitioner agreed with counsel['s] assertion as required in Cox, supra. [F]urther, specific facts can show petitioner had []no[] knowledge that counsel would assert his prior convictions. [F]irst[,] if petitioner had known counsel would assert his prior conviction[s] and agreed with his assert[ion], counsel['s] trial strategies would also have been known, petitioner would have known what would be done to protect his rights, and both petitioner and counsel would have informed the court that petitioner agreed with counsel waiving the rights involved.

[A]n examination of counsel['s] action[s] clearly show that counsel acted without petitioner['s] consent. [F]irst[,] counsel didn't qualify his assertion of prior convictions, and if petitioner had known in advance the assertion would be made, clearly petitioner himself would have brought this to the court['s] attention. [S]econdly[,] had petitioner known that counsel would assert prior convictions he would have also known that the prosecution would use same to impeach and that counsel would thereafter request [a] limiting instruction to confine the issue to credibility. [T]he records show no limiting instruction was sought making it obvious that had petitioner known what counsel would do but didn't do, it would have been brought to the trial court['s] attention. [F]urther, if petitioner had known then common sense would suggest that counsel told him that prior conviction[s] would be discussed as little as possible. [I]f this court will examine counsel['s] redirect-examination, [] counsel himself went

11

back into the subject of prior convictions knowing the same was improper.

     [P]etitioner['s] admission of prior convictions was based purely on ignorance[] because he was never informed of the consequences of making such a statement knowing full well that the sentence would possibly be life in prison[]. [T]he records conclusively show that no mention whatsoever was made to his being sentence[d] as a habitual offender, in fact the trial court sentence[d] him to 30 years, but not to thirty years as a habitual offender.

     [P]etitioner submit[s] that counsel errored (sic) in failing to object to the sentence imposed by the trial court  because if the court based its sentence on counsel['s] admission it violated petitioner['s] rights to due process because it was never shown that petitioner agreed with counsel['s] assertion[,] Cox, supra, or if the court sentence was based on petitioner['s] admission of prior conviction[s] then counsel was still required to object because the records fail to show that petitioner was ever informed of the consequences of his admission. Wright, supra.

     [P]etitioner contends that he was prejudiced by counsel['s] error in that absence (sic) the admission used by the trial court, petitioner['s] sentence would have ranged from (1) to (10) years in the state penitentiary. [T]his is based on the fact that the trial court never received into evidence certified copies of petitioner['s] prior convictions, and even though the prosecution asked to allow petitioner['s] priors, the court never admitted them as show[n] from the records.[] [F]urther[,] even if it['s] determine[d] the petitioner['s] priors was (sic) properly before the court they was (sic) still inadmissible because they fail to meet the requirements of 12-21-67, Code of Ala. 1975, in that each of petitioner['s] prior convictions fail to state that each is a true and complete copy of the records or bear the seal of the circuit, district or municipal court as required by statute.

     As a result of counsel['s] error and the actual prejudice suffered therefrom, petitioner was denied his 6th Amendment right to the effective assistance of counsel at sentenc[ing].

Id. at 11-13. This was the entirety of petitioner's argument related to trial counsel's

performance at sentencing, see id.,[6] and it was rejected by Magistrate Judge Milling, in

the manner he construed the claim, in his report and recommendation entered on

---

     [6]     This argument, of course, bears little, if any, similarity to the argument made by Hines during the error coram nobis hearing on February 14, 1985. Compare id. with id. at Doc. 10, Exhibit B Number 3, Tr. 31-33, 34 & 35.

October 31, 1988, *see id.*, Doc. 33, at 12.

Petitioner claims that trial counsel was ineffective in failing to object to the sentencing phase of Petitioner's trial. Petitioner's claim revolves around his assertion that his prior convictions were used to enhance his sentence and that if he had known they would be used in that manner, he would not have admitted to them.

Whether Petitioner had admitted to the prior convictions or not, they were a matter of record and would have been used by the judge in determining a sentence. See Ala.Code § 13A-5-9 (1975). Petitioner admitted to two prior convictions of felonies, though the record established that there were three. [] Alabama law provides that

In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:

(1) On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years.

Ala. Code § 13A-5-9(c) (1975). Possession of burglar's tools is a Class C felony. Ala. Code § 13A-7-8(b) (1975). Petitioner's sentence was for thirty years. As Petitioner's sentence comports with Alabama law, he cannot be said to have raised a meritorious claim: his trial attorney had nothing to which to object.

*Id.* at 12.[7]

As reflected above, Hines now is attempting to revise history in suggesting that

---

[7]    The report and recommendation was issued more than two (2) years after the filing of petitioner's "Demand For Judgment." *Compare id.*, Doc. 33 *with id.*, Doc. 27. Indeed, Hines spent the end of 1986 and much of 1987 trying to procure an opinion from this Court. *See id.*, Docs. 28-30. Hines filed two petitions for writ of mandamus, and in each the petitioner conceded that the issues he had raised could be decided without the need for an evidentiary hearing. *Compare* Doc. 28, at 1 ("ON THE 25th OF APRIL[,] 1986, AN ORDER TO SHOW CAUSE WAS ISSUED, WITH THE RESPONDENT FILING AN ANSWER THERETO ON MAY[] 27[,] 1986. IN THE RESPONDENT['S] RESPONSE NO EVIDENTIARY HEARING WAS REQUESTED, AND PETITIONER CONSENTED THERETO BY NOT REQUESTING SAME.") *with* Doc. 29, at 2 ("[B]ecause the district court had already determine[d] that the state court records was (sic) adequate to determine petitioner['s] claims, on [O]ct[.] 30[,] 1986, petitioner filed a writ of mandamus in the district court to compel the magistrate to exercise his function authorized by the district court under 28 U.S.C. 636(A)(B), which petition is presently pending in the district court.").

this Court specifically addressed trial counsel's performance at sentencing by finding that his admission of prior felony convictions constituted a waiver of the notice requirements contained in Ala.R.Crim.P. 26.6(b)(3) (*see* Doc. 5, at 10), inasmuch as it is clear that petitioner did not raise the issue in this manner to this Court in 1986, *compare id. with Hines v. Johnson,* CA 86-0357-BH, Doc. 27, at 11-13. More interestingly, in his November 18, 1988 objections to the report and recommendation of the Magistrate Judge, petitioner makes no mention of his claim that trial counsel provided ineffective assistance at sentencing. *See id.,* Doc. 36. On December 5, 1988, United States District Judge W.B. Hand adopted the recommendation of the magistrate judge over the objections the petitioner did assert. *See id.,* Docs. 37 & 38. Although petitioner attempted to appeal, *see id.* at Dos. 39-41, the Eleventh Circuit, on March 29, 1989, denied his application for a certificate of probable cause as well as his motion to appeal *in forma pauperis.*

Hines filed his first Rule 32 petition in the Circuit Court of Mobile County, Alabama on May 9, 2003,[8] alleging his sentence exceeded the maximum authorized by law since the trial court lacked jurisdiction to impose a 30-year sentence based on a conviction of a Class C felony where the state did not invoke the provisions of the HFOA prior to trial, after conviction, or before sentencing and, further, that due process and the interests of justice required a redetermination of his ineffective assistance of counsel claim. (*See* Doc. 5, Exhibit B, MEMORANDUM, at 2.) Without requiring an

---

[8]     Hines apparently did nothing to attack his conviction and sentence from March of 1989 until May 9, 2003. Perhaps this was because petitioner was paroled and had no interest in attacking same until he was picked up as a result of a traffic stop and alleged parole violation on December 6, 2001. *See Hines v. Commissioner, Department of Corrections,* CA 02-0574-CB-C, Doc. 1, at 11.

14

answer from the State, the trial court summarily dismissed Hines' petition on May 21, 2003. (*See id.*) The Alabama Court of Criminal Appeals affirmed the trial court's summary dismissal by unpublished memorandum opinion issued on September 19, 2003. *Hines v. State*, 886 So.2d 190 (Ala.Crim.App. 2003) (table).

> Hines's claims fail. First, Hines's claim that the trial court erred in not conducting an evidentiary hearing is without merit. Rule 32.7(d) does not require a statement of the reasons for the trial court's summary dismissal of a petition. <u>Fincher v. State</u>, 724 So.2d 87, 89 (Ala.Crim.App. 1998). Hines's next claim also fails. As acknowledged in his petition, Hines took the stand at trial and admitted his prior felonies. As a result, the State did not have to prove his prior convictions for sentence-enhancement purposes. Thus, there is no merit to this claim. Additionally, this claim is precluded from appellate review, as it could have been raised at trial or on appeal but was not. Rules 32.2(a)(3) and (5), Ala.R.Crim.P.; <u>Franks v. State</u>, 819 So.2d 106, 108 (Ala.Crim.App. 2001). Moreover, this claim is non-jurisdictional in nature and is thus precluded [by] the statute of limitations found in Rule 32.2(c), Ala.R.Crim.P.[] <u>Kaska v. State</u>, 709 So.2d 500, 501 (Ala.Crim.App. 1997). Lastly, Hines's claim regarding ineffective assistance of counsel is also precluded from appellate review, as it, too, falls outside the statute of limitations period provided in Rule 32.2(c), Ala.R.Crim.P.[] <u>See</u> <u>Kaska v. State</u>, 709 So.2d 500, 501 (Ala.Crim.App. 1997).

(Doc. 5, Exhibit B, at 2-3.) Petitioner's application for rehearing was denied on October 10, 2003, *Hines v. State*, 897 So.2d 1251 (Ala.Crim.App. 2003) (table), and his petition for writ of certiorari was denied on January 16, 2004, *Ex parte Hines,* 899 So.2d 317 (Ala. 2004) (table).

Although not mentioned in any pleading filed in this case (*see* Doc. 5, at 4-5), Hines filed his second Rule 32 petition in the Circuit Court of Mobile County, Alabama on December 18, 2006. (Doc. 12, Exhibit 4.) The trial court granted the State's motion to dismiss the Rule 32 petition by order dated March 6, 2007, and there is nothing to indicate that Hines appealed the denial of this dismissal to Alabama's appellate courts. (*See id.*)

Hines filed his third Rule 32 petition in the Mobile County Circuit Court on March 9, 2010. (*See* Doc. 12, Exhibit 5, MEMORANDUM, at 1.) The trial court summarily denied the petition and Hines appealed. (*Id.*) The Alabama Court of Criminal Appeals affirmed the circuit court's judgment by unpublished memorandum decision entered on August 13, 2010. (*Id.* at 2.)

> The appellant argues that the trial court did not have jurisdiction to impose a sentence in his case and that his sentence exceeds the maximum allowed by law. Specifically, he appears to contend that he was not sentenced as a habitual offender because neither the trial court nor the State invoked the Habitual Felony Offender Act prior to trial, during the trial, or at sentencing. However, the appellant raised a similar claim in a previous Rule 32 petition, and the circuit court denied the petition. On appeal from that denial, we noted that the appellant's claim regarding sentencing was not meritorious because he took the stand at trial and admitted his prior felony convictions. Thus, the circuit court properly found that the appellant's claim is barred as successive. Also, because the appellant's claim was precluded, the circuit court properly summarily denied his petition.

(*Id.* at 1-2 (internal citations omitted).) It is clear that the Alabama Court of Criminal Appeals overruled Hines' application for rehearing, since the Alabama Supreme Court denied his petition of writ of certiorari, without written opinion, on October 8, 2010 (Doc. 12, Exhibit 6).

Soon thereafter, Hines filed an application in the Eleventh Circuit Court of Appeals seeking an order authorizing this Court "to consider a second or successive petition for a writ of habeas corpus." (Doc. 12, Exhibit 8, Application for Leave to File a Second or Successive Habeas Corpus Petition, 28 U.S.C. § 2244(b), at 1.) The Eleventh Circuit entered an opinion in January of 2011 denying Hines' application for leave to file a second or successive petition, therein specifically finding that he had "failed to make a *prima facie* showing of the existence of either of the grounds set forth in § 2244(b)(2)[.]" (*Id.* at 2.)

16

First, Hines fails to cite to a single Supreme Court case that is retroactively applicable to cases on collateral review and that was previously unavailable. *See Tyler v. Cain,* 533 U.S. 656, 661-63, 121 S.Ct. 2478, 2482, 150 L.Ed.2d 632 (2001) (holding that a petitioner seeking leave to file a successive habeas petition based upon a new rule of law must establish that the Supreme Court has held the new rule is retroactively applicable to cases on collateral review). Additionally, all four of Hines's claims attack the application of the Habitual Offender Act enhancement and his overall sentence. Because Hines does not suggest that the alleged new evidence would have altered the jury finding on his guilt of the underlying offense, he is not eligible for relief under the second exception. *In re Diaz,* 471 F.3d 1262, 1264 (11th Cir. 2006). Therefore, Hines has failed to state a claim that satisfies the requirements for filing a second or successive § 2254 petition under 28 U.S.C. § 2244(b).

(*Id.*)

As reflected in Chief United States District Judge Steele's order of August 21, 2012, the instant case "began as an 'independ[e]nt action and/or motion to set aside judgment' under Rule 60(b)(5) or (6)." (Doc. 28, at 2, citing Doc. 1,at 1 & 14-15.)

The filing challenged the adverse ruling in the petitioner's first habeas petition on the grounds that "the State of Alabama deliberately failed to inform this Court of a pending case in the Alabama Court of Criminal Appeals that was identical to the issue raise[d] by me on habeas corpus," the legal principle in which case ("*Webb*") would have required the grant of his petition.

The Magistrate Judge reviewed this filing and ordered the petitioner to file a superseding Section 2254 petition on the approved form. The petitioner objected that he was pursuing relief under Rule 60(b) and as an independent action, not as a Section 2254 petition, and that he "does not seek to raise new claims but seek[s] to reopen his original habeas corpus," but he eventually filed a petition on the standard form. The petition's first ground invokes Rule 60(b)(5) and (6) and addresses the same situation detailed in his original filing. The petition accuses the state of having "intentionally withheld from petitioner and this Court the fact that the case law in which this Court based its denial of habeas corpus relief had been reversed . . . ." The petition also raised other grounds.

The state's answer raised as its single argument that the petition was an unauthorized second or successive petition. The state did not address the petition's invocation of Rule 60(b). In his reply brief, the petitioner asserted that, "by concealing the <u>Webb</u> decision the state committed fraud on the court . . . ." The petitioner repeatedly described

17

the state's conduct as a fraud on the court and described such fraud as an exception to the rules governing second and successive petitions. The R&R recommended dismissal on the grounds advanced by the state, without addressing the 60(b), fraud-on-the-court aspect of the petition. The Court, in adopting the R&R as its opinion, likewise did not address this aspect.

Section 2244(b) severely restricts the bringing of "claims" in a second or successive petition. A motion under Rule 60(b) may or not contain a claim for purposes of this rule. *Gonzalez v. Crosby,* 545 U.S. 524, 530-31 (2005).

> In most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify. A motion can also be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief. That is not the case, however, when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings. . . . Fraud on the federal habeas court is one example of such a defect.

*Id.* at 532 & n.5. By this language, "[t]he *Gonzalez* Court specifically identified fraud on the federal habeas court as an example of one such permissible Rule 60 claim." *Galatolo v. United States*, 394 Fed.Appx. 670, 672 (11th Cir. 2010); *accord Zakrewski v. McDonough*, 490 F.3d 1264, 1266-67 (11th Cir. 2007).

Assertions under Rule 60(b) of fraud on the court are properly brought under Rule 60(b)(3). *Day v. Benton*, 346 Fed.Appx. 476, 477-78 (11th Cir. 2009). The petitioner did not invoke subsection (3) but only subsections (5) and (6). However, a party may bring an "independent action," including one to "set aside a judgment for fraud on the court," Fed.R.Civ.P. 60(d), and "[a] court may consider a Rule 60(b) motion as an independent action for relief where the adverse party would not be prejudiced." *Id.* at 478. It is not clear whether the state would be prejudiced by construing the petitioner's present Rule 60(b) motion as one under Rule 60(d) but, since the petitioner did in fact institute this action as an "independent action" and eliminated that nomenclature based only on the Magistrate Judge's order to refile on a standard 2254 form, it is equally unclear whether any prejudice to the state would be sufficient grounds not to so construe his filing.

On the present record, the Court must conclude that reasonable jurists would find it debatable whether the petitioner's first ground for relief constitutes, or should be construed as, a request for relief under Rule 60(d), immune from the procedural requirement of appellate pre-authorization and not subject to summary dismissal as a second or successive petition.

To obtain a COA, however, the petitioner must also show that reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right. The parties and the Magistrate Judge have not addressed the requirements for fraud on the court and whether they have been, or reasonably could be construed as having been, met in this case. Nor have they addressed whether, assuming any such fraud on the federal court occurred, there was (or could reasonably be considered to have been) an underlying constitutional violation in connection with the use of the petitioner's prior conviction[s] to sentence him as a habitual offender. Therefore, the Court cannot determine whether reasonable jurists would find it debatable whether the petitioner's first ground states a valid claim of the denial of a constitutional right.

(*Id.* at 2-4 (internal citations to the file and footnotes omitted).)

In considering whether a COA should issue in this case, with respect to Hines' first ground for relief, the undersigned first addresses whether the requirements for fraud upon the court have been met in this case and, secondly, whether there was (or could reasonably be considered to have been) an underlying constitutional violation in connection with the use of the petitioner's prior convictions to sentence him as a habitual offender.

## CONCLUSIONS OF LAW

**A.** **Fraud Upon the Court.** As recognized by the Eleventh Circuit, "'[f]raud upon the court' under Rule 60(d) embraces only '. . . fraud which does or attempts to, defile the court itself . . . so that the [judiciary] cannot [properly decide the] cases that are presented for adjudication, and relief should be denied in the absence of such conduct.'" *Day v. Benton,* 346 Fed.Appx. 476, 478, 2009 WL 3042043, *2 (11th Cir. Sept.

19

24, 2009), quoting *Travelers Indem. Co. v. Gore,* 761 F.2d 1549, 1551 (11th Cir. 1985); *see also Zakrzewski v. McDonough*, 490 F.3d 1264, 1267 (11th Cir. 2007) ("Fraud upon the court embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetuated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." (internal quotation marks, elipses, and brackets omitted)).[9]

> Moreover, the essential elements of an independent Rule 60(d) action were recited in *Bankers Mortg. Co.* [*v. United States*, 423 F.2d 73 (5th Cir. 1970)] as follows: (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud . . . which prevented the [movant] . . . from obtaining the benefit of his [position]; (4) the absence of fault or negligence on the part of [movant]; and (5) the absence of any adequate remedy at law.

*Day, supra,* 346 Fed.Appx. at 478, quoting *Bankers Mortgage Co.,* 423 F.2d at 79. As it relates to this third element, the Eleventh Circuit in *Galatolo v. United States*, 394 Fed.Appx. 670 (11th Cir. Aug. 30, 2010) noted that when, as here, "a Rule 60 motion is construed as an independent action alleging fraud on the court, the movant must establish by ***clear and convincing evidence***, among other things, 'fraud, accident, or mistake which prevented the [movant] in the judgment from obtaining the benefit of his [position].'" *Id.* at 672 (emphasis supplied), quoting *Travelers Indem. Co., supra,* 761 F.2d at 1551.

> Only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. An action for

---

[9]     At all times, of course, it is important to recognize that the "fraud exception to § 2244's prohibition on successive § 2255 motions . . . only applies 'where the fraud was perpetrated on the federal court and resulted in the denial of federal habeas relief, not where the fraud was perpetrated on a [trial] court.'" *El-Amin v. United States,* 172 Fed.Appx. 942, 945-946 (11th Cir.) (quoting *Gonzalez v. Secretary for Dep't of Corrections*, 366 F.3d 1253, 1284 (11th Cir. 2004)), *cert. denied*, 549 U.S. 938, 127 S.Ct. 327, 166 L.Ed.2d 244 (2006).

> fraud on the court should be available only to prevent a grave miscarriage of justice. Further, the movant must show an unconscionable plan or scheme to improperly influence the court's decision. Conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud.

*Id.* (internal citations, quotation marks, and brackets omitted).) Thus, independent actions under Rule 60(d) are "'reserved for those cases of "injustices which, in certain instances, are deemed sufficiently gross to demand a departure" from rigid adherence to the doctrine of *res judicata*.'" *Day, supra,* 346 Fed.Appx. at 478, quoting *United States v. Beggerly,* 524 U.S. 38, 46, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998), in turn quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).

There is simply no injustice here, sufficiently gross, to demand a departure from rigid adherence to *res judicata*. Instead, what petitioner is asking this Court to swallow whole, solely in order to skirt the requirements of 28 U.S.C. § 2244(b)(3)(A),[10] are conclusory allegations, devoid of any probative facts, that the respondent "concealed" from this Court in *Hines v. Johnson,* CA 86-0357-BH, the Alabama Court of Criminal Appeals' decision in *Webb v. State*, 539 So.2d 352 (Ala.Crim.App. Apr. 28, 1997), a case which Hines claims "adopted verbatim [the] legal argument that was before [this] Court [in *Hines v. Johnson, supra.*]" (*See* Doc. 23, at   .) It is impossible, in the first instance, for the undersigned to perceive how the respondent "concealed" the *Webb* case from this

---

[10]    In this regard, the undersigned would note that in his Application for Leave to File a Second or Successive Habeas Corpus Petition, filed with the Eleventh Circuit Court of Appeals, Hines simply argued that *Webb* was not available to him when he filed his first habeas corpus complaint with this Court in 1986. (*See* Doc. 31, Exhibit A, at 15.) Being unsuccessful in that endeavor (*see, e.g., id.,* Exhibit B), however, and ever the whirling dervish, Hines now conveniently regroups to contend that the respondent perpetuated a fraud on this Court by "concealing" *Webb* from the court.

Court,[11] even taking petitioner at his word that the respondent received an advanced copy of that case on April 17, 1987, since Magistrate Judge Milling did not pen his report and recommendation until well over eighteen (18) months later on October 31, 1988 and, therefore, easily could have discovered this case with a modicum of research.[12] In other words, a finding by this Court that it constitutes a fraud for a party not to submit every case about which he/she/it has knowledge, and which this Court could easily discover itself by performing basic legal research, would enlarge the bounds of the egregious conduct necessary to constitute a fraud on the court beyond that contemplated by the Eleventh Circuit. Thus, the respondent simply did not "hide" or "conceal" *Webb* from this Court and, therefore, no fraud was perpetuated on this Court by the respondent in *Hines v. Johnson, supra*.

That the foregoing conclusion is correct is apparent from the record of the

---

[11]     Petitioner gives this Court no indication why it should have dawned on the respondent to bring *Webb* to the attention of Magistrate Judge Milling or United States District Judge Hand after it was decided since the pertinent constitutional issue before this Court was whether petitioner's trial counsel provided ineffective assistance at sentencing, an argument which respondent responded to correctly by citing the Supreme Court's decisions in *Strickland* and *Cronic* penned some two years earlier, and *Webb* was not decided in the ineffective-assistance-of-counsel context, *see* 539 So. 2d at 351-356.

[12]     After all, as alluded to earlier, it is this Court's task to adjudge cases that are presented for adjudication and in order to accomplish this task the Court necessarily performs its own independent research. And it would have been relatively simple for this Court to find *Webb*, as well as a plethora of other cases involving Alabama's HFOA and, more specifically, the proper methods for proving prior convictions. This is because it was in the early and mid 1980's (that is, during the time petitioner was convicted and sentenced for possession of burglar's tools) that the proper methods for proving prior convictions **evolved** inasmuch as the HFOA, as initially passed, did not set forth such proper methods. *See Jones v. White*, 992 F.2d 1548, 1569-1570 (11th Cir. 1993). Indeed, it was not until mid-1987 that "the Alabama legislature codified the proper methods for proving a prior conviction for purposes of enhancement under the HFOA[,]" *id.* at 1570, and after enactment of this statute, "Alabama courts held that prior convictions could be proved by a certified minute entry, a certified judgment entry, or by the defendant's admission of the prior conviction." *Id.*, citing *Brooks v. State*, 520 So.2d 195, 200 (Ala.Crim.App. 1987).

proceedings in *Hines v. Johnson*, as previously set forth at some length. First, in his habeas corpus complaint filed in that case, Hines only set forth in conclusory fashion that his attorney provided ineffective assistance during sentencing and when he finally expounded on his claim in his "Demand for Judgment"[13] this particular claim bore no resemblance to the arguments presented to the trial court during his error coram nobis hearing and certainly placed neither this Court nor the respondent on notice that the legal arguments he was making were identical to the legal arguments made in *Webb*.[14] Indeed, a comparison of the two cases reveals several glaring differences, the least of which, as alluded to earlier, is that *Webb* was not decided in the context in which Hines was asking this Court to decide his habeas case, that is, with respect to a claim of ineffective assistance of counsel. In addition, unlike *Webb*, where the defendant only admitted to his prior felony conviction on cross-examination, 539 So.2d at 351-352 & 353, Hines not only admitted his prior convictions on cross-examination but, as well, admitted those convictions on redirect examination and testified on direct examination to being in the penitentiary prior to being charged with the instant crime.  Given the differences between the two cases, there was simply no obligation on the respondent's part  to bring *Webb* to the attention of the Court, and certainly no "fraud" perpetuated

---

[13]        As is apparent from the record, this document was filed well after the respondent had amended his answer for the last time. Moreover, this Court did not request a supplemental response from the respondent after petitioner filed his Demand for Judgment. *See Hines v. Johnson, supra*.

[14]        Petitioner incorrectly informed this Court in his current "original action" that in ruling on his previous habeas corpus petition, Judge Milling held that a defendant's admission of prior convictions during trial waives the State's notice requirement and burden of proof inasmuch as nowhere in the report and recommendation does Judge Milling make any mention of the notice requirement or make the statement Hines attributes to that decision. Of course, this is absolutely a correct statement of the law and *is* the basis for the undersigned finding no underlying constitutional violation in connection with the use of petitioner's prior convictions to sentence him as a habitual offender.

23

on this Court for failing so to do.[15] Not surprisingly, therefore, the undersigned finds that the requirements for fraud on the court have not been, nor could they reasonably be construed as having been, met in this case.

      **B.**    <u>**Underlying Constitutional Violation**</u>. Even had petitioner been able to satisfy the arduous requirements of fraud on the court, there was no (nor could there reasonably be considered to have been an) underlying constitutional violation in connection with the use of the petitioner's prior convictions to sentence him as a habitual offender. This is very simply because at the time of Hines' conviction and sentence on December 5, 1983,[16] Alabama law provided that there was no requirement for notice under Rule 6(b)(3)(ii) of the Alabama Rules of Criminal Procedure where the defendant admitted to prior felony convictions during his trial testimony. *See Wilson v. State*, 428 So.2d 197, 201 (Ala.Crim.App. Mar. 1, 1983) (in a case in which the defendant was sentenced immediately after the jury returned its guilty verdict, the Alabama Court of Criminal Appeals held that "[w]here the accused admits the prior felony conviction in his testimony . . ., the necessity for the notice is obviated.").[17] In this case, Hines admitted two prior felony convictions in his testimony on re-direct examination, thereby obviating the necessity for notice. Because his trial attorney had nothing to which to object at sentencing, he cannot be said to have rendered constitutionally

---

[15]    Based upon the foregoing discussion, it is also clear that Hines has not provided clear and convincing probative facts that there was an "'unconscionable plan or scheme' to influence the court's decision." *See Galatolo, supra,* 394 Fed.Appx. at 672 (citation omitted).

[16]    Hines was tried, convicted and sentenced on December 5, 1983.

[17]    Of course, the respondent did not cite this Court to *Wilson, supra,* back in his 1986 response to Hines' first federal habeas complaint (nor any of the many state cases dealing with the HFOA at the time), even though *Wilson* is much closer factually to Hines' case than is *Webb*, yet petitioner remains curiously silent with respect to respondent's failure in this regard.

24

ineffective assistance in violation of the Sixth Amendment to the United States Constitution.[18]

In light of the foregoing, the undersigned recommends that the Court deny petitioner's motion to reconsider (Doc. 23) and specifically find that reasonable jurists could not find it debatable that petitioner's first ground states a valid claim of the denial of a constitutional right. *See Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). It does not and, therefore, petitioner's request for a certificate of appealability is properly **DENIED** on reconsideration.

## CONCLUSION

The Magistrate Judge recommends that the Court **DENY** Thomas Curtis Hines' motion to reconsider the denial of a COA (Doc. 23). As reflected in this supplemental report and recommendation, Hines is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 11th day of September, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[18]     At this juncture, the undersigned would also remind the reader that Hines did not object to that portion of Judge Milling's October 31, 1988 report and recommendation which found that his trial attorney did not provide ineffective assistance at sentencing. *See Hines v. Johnson, supra,* at Doc. 36; *compare id. with id.,* Doc. 33.

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.        *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).    The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[19] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.        *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[19]        Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).